# REMY v. OLDS et al.

## No. 18,114; September 28, 1893.

### 34 Pac. 216.

**Actions.—A Cause of Action may be Stated in Different Counts** in order to meet any possible phase of the evidence, and the pleader will not be required to elect on which count he will proceed.[1]

**Contract—Excuse for Nonperformance—Act of God.—**Where plaintiff, in an action for breach of contract, must show performance on his part before he can recover, nonperformance by him cannot be excused on the ground that it was caused by the act of God; and Civil Code, section 1511, providing that want of performance is excused "when it is prevented or delayed by irresistible superhuman cause," does not apply to such cases.[2]

**Contract to Plant Grape Vines—Meaning of Words.—**Where a contract requires a party to plant "grape vines," and the word "vines" does not appear to have been used in any special or local sense, expert evidence is not admissible to show its meaning, but it will be held to mean indifferently either cuttings or rooted plants, according to common usage.

---

[1] **Cited** and followed in Willard v. Carrigan, 8 Ariz. 73, 68 Pac. 539, which was an action by a real estate broker for compensation for finding a purchaser. The complaint contained a count based on an alleged oral contract and another, in effect, on a quantum meruit.

Cited and approved in Van Lue v. Wahrlich-Cornett Co., 12 Cal. App. 751, 108 Pac. 716, which was an action for the return of property seized by the sheriff, claimed by the plaintiff as exempt under the statute. The court said that a comparison of one section of the statute with another forced "the conclusion that a person cannot claim both a farmer's and a teamster's exemption." They added, however, giving the citation as authority: "But we think it was competent for the plaintiff, being in doubt as to which exemption he was entitled to, to set forth both in his complaint, as was done in this case."

[2] **Cited** in Ontario etc. Assn. v. Cutting Fruit Packing Co., 134 Cal. 25, 86 Am. St. Rep. 231, 53 L. R. A. 681, 66 Pac. 30, the court saying there was nothing in it conflicting with the principles announced in the latter case. To quote: "In the case at bar, the sale having been of specific varieties of fruit, growing and to be grown on specific orchards, and the orchards having been so far affected by the extraordinary drought that they did not produce sufficient fruit of the varieties named to comply with the contract, the plaintiff could be compelled to perform the contract only so far as it was possible for it to do so."

**Contract to Furnish Water for Irrigation—Action for Breach.** In an action for breach of a contract to furnish water for irrigation, whereby a large number of grape cuttings planted by plaintiff died, testimony of a witness for defendants that he (witness) procured fifteen thousand cuttings from the lot from which plaintiff procured his, planted them on similar land, and watered and cared for them well, and yet nearly all of them died, though it relates to a collateral matter, is relevant, as tending to prove a fact from which it could be inferred that the loss of plaintiff's vines was not caused by defendants' failure to furnish water.[1]

**Contract—Action on—Sufficiency of Performance.**—Where one of the issues in an action on a contract is as to whether there was such performance by plaintiff as would entitle him to recover, an instruction that, if the jury believe that defendants did not perform their part of the contract, they must find for plaintiff, is erroneous, as it takes from the jury the issue as to performance by plaintiff.

APPEAL from Superior Court, Merced County; Joseph H. Budd, Judge.

Action by Thophile Remy against E. J. Olds and George H. Barfield for breach of contract. There was a judgment in favor of plaintiff and defendants appeal. Reversed.

J. W. Knox for appellants; James F. Peck and T. C. Law for respondent.

TEMPLE, C.—Defendants take this appeal from the judgment and an order denying a new trial. This case has been here before: 88 Cal. 537, 26 Pac. 355. In the opinion on the

---

[1] **Cited** and distinguished from the case of a sale by sample where the goods were delivered in two shipments at a considerable interval and the action was only for payment for the last one. Here evidence that the goods first shipped were not equal to the sample was held not admissible in the absence of proof that they were similar in quality to the others.

Cited and approved in Barber v. Martin, 67 Neb. 452, 93 N. W. 724, an action by a stockholder against the manager of an insurance company, who, as the plaintiff alleged, had undertaken to sell her stock, but in reporting to her afterward had concealed from her the real price received. Here the evidence of other stockholders, similarly situated, as to representations of the manager to them as to sales of their stock was admitted as throwing light on the case.

first appeal the substance of the complaint and the contract sued on are fully stated. The answer denies the existence of the contract, but admits that such a contract was agreed upon, and avers that it was to have been reduced to writing and signed by all parties; that it was reduced to writing, signed and acknowledged by defendants, and sent to plaintiff, who was to sign, acknowledge, and have it recorded. This was October 9, 1888. It appears that plaintiff did not then sign it, but had it recorded. Afterward, on being informed that his signature was necessary, he did sign it, and had it re-recorded. Meantime he had taken possession of the land and commenced performance. Defendants consented to his acts, believing that he had signed the contract, but, discovering that he had not done so, they notified him in writing in June, 1889, that they would not be bound by it, and considered him a trespasser on the land. Apparently, however, although that is not made very certain by the evidence, the plaintiff had executed it before the notice was given. Upon receiving the notice plaintiff withdrew from the land and commenced this action.

The complaint, as was said on the former appeal, contains two counts—one for damages on the contract, and the other to recover materials furnished, money laid out and expended, and labor performed, all furnished and done under the contract, and in performance of it, before the notice from defendants. After a jury had been impaneled, defendants requested the court to require plaintiff to elect upon which count or cause of action he would rely, and that thereupon the other cause of action be dismissed. This the court refused to do, and the ruling is assigned as error. Conceding that this is a case in which the same cause of action is differently stated in two separate counts, still I think the ruling correct. The right to so plead is well established here: Wilson v. Smith, 61 Cal. 209; Katz v. Bedford, 77 Cal. 319, 1 L. R. A. 826, 19 Pac. 523; Leeke v. Hancock, 76 Cal. 127, 17 Pac. 937; and many earlier cases. Since it is allowable to state the cause of action in the alternate, using different counts in order to meet any possible phase of the evidence, a party cannot be deprived of the privilege by being compelled to strike out all causes of action save one before the trial commences. It would render the privilege a barren one. But the two causes

of action here are not the same. The second count only enumerates other damage, not specially set out in the first count. Perhaps all should have been in the one count, but there can be no doubt of the right of plaintiff to join all in one suit, and he cannot be compelled to abandon any part of his claim.

The next point relates to the ruling admitting the contract in evidence on the ground that it had not been executed by plaintiff. The facts in regard to this have already been stated. This ruling was clearly correct. It is convenient to refer to the concise statement of the provisions of the contract in the opinion rendered on the last appeal. Plaintiff did not level and prepare the land in the fall of 1888, but claims that he did in the following February, and in March he set out grape cuttings upon lots 49 and 50, and also a nursery of about four acres for himself on lots 71 and 72. The vines nearly all died, as plaintiff maintains, because defendants did not furnish water for irrigation. Plaintiff seeks to recover as damages the cost of the cuttings and his labor in preparing the land and planting. To this claim on the part of plaintiff the defendants interpose several objections. (1) They contend that he cannot recover damages in a suit upon the contract because he has himself failed to perform his obligations under it, in that he did not plow, level, or prepare the land for planting in the fall of 1888. They contend and produce evidence in support of the proposition that, unless the land were plowed in the fall before the rains, it would not be in good condition for planting in the following spring.. (2) That the vines were not properly planted, and would not have survived if water had been furnished. (3) That the vines, when planted, were not protected by a rabbit-tight inclosure, and that the rabbits gnawed the bark from the cuttings, and nibbled the buds, and prevented their growing. There was no evidence that rabbits did injure the vines, but there was that rabbits were very numerous there, and that protection against them was necessary to enable vines to grow as soon as planted. And (4) the cuttings were dead, or at least not suitable for the purpose when planted. Defendants also contend that they did furnish water as soon as it was required; if not on Hartley avenue, still, where it was equally convenient, and where plaintiff had consented to receive it. It was incumbent upon the

plaintiff, since he seeks to recover upon the contract, to show full performance on his part, so far as he was not prevented from performing by defendants. He did not claim that he had plowed, leveled, or prepared the land in the fall, but he contended that the provision as to time was waived by defendants, and that they consented to his doing this work in February; also that the delay was excused because performance at the time was prevented by act of God, to wit, a heavy storm or fall of rain, which rendered the land unfit to be plowed in the fall.

Defendants objected to the evidence, (1) because the complaint avers that plaintiff had performed the contract as made and does not show an alteration; (2) in effect, though not so stated, because the act of God would not excuse delay. As to the first, it is enough to say that the position of plaintiff does not assume that there had been any alteration of the contract, but that the defendants agreed to accept what was done as performance. The contract as made was fully performed, if plaintiff is correct, though not at the time stipulated. But, regarding it as an alteration of the contract, it is evident that defendants have not been injured. As to the ruling permitting evidence that it was impossible to plow, level, and prepare the land in the fall of 1888, further consideration is necessary. The jury were also instructed upon this matter, and all may as well be considered together. Plaintiff, testifying in his own behalf, was proceeding to state that he attempted to plow, level, and prepare the land in October, when the rains came, and he could do no more. Defendants here objected that it was immaterial whether the rain rendered it impossible or not, when the court remarked, in the presence of the jury: "I would like to see the decision that, where the act of God prevents a man, because of that act of God he shall lose all of the results of his labor. Objection overruled." Upon the conclusion of the evidence, the jury was instructed as follows: "Time is of the essence of the contract in controversy in this action. This means that, unless every act meant to be done under the contract is done within the time therein stipulated, there is a breach of the contract by whichever party fails so to perform, unless the time in which the act is to be done be waived, or such performance be impossible by the act of God, such as an unexpected storm." The first

idea which suggests itself upon this matter is that a rain in the last days of October is not such an extraordinary event as will constitute an act of God excusing performance. It was a seasonable event, one which was likely to happen, and which common prudence would have provided for. Respondent, however, contends that this view is justified by section 1511, Civil Code. That is, in effect, that want of performance "or any delay therein is excused by the following causes to the extent to which they operate. . . . . (2) When it is prevented or delayed by an irresistible superhuman cause," etc. I cannot think this section was intended to have any application to a case of this kind. The doctrine in relation to the act of God is more often invoked by insurers than by others, but is in a proper case matter of defense, where one is sued for failure to perform a contract. When, however, one sues upon a contract, and must show performance on his part to entitle him to recover, he cannot rely upon such prevention to show performance. Excuse for not performing, in the nature of things, cannot be performance. A defendant cannot be made to pay for the act of God preventing the plaintiff from rendering an equivalent for the money he seeks to recover. The provision cited from section 1511 cannot be construed as going beyond this. Properly understood, it announces a well-known rule of law, but pressed further it works a radical change in the rule. Besides, the view here taken is the natural and obvious meaning of the language employed. The statute purports simply to provide an excuse for failure to perform. Plaintiff might have relied entirely upon his claim that defendants had waived the matter of time, but did not. Under the circumstances, it is impossible to say that this evidence and the instruction did not have weight in convincing the jury that plaintiff was not in default when the notice was served: See Civ. Code, sec. 1440.

Plaintiff set out on lots 49 and 50 grape cuttings or segments of grape vines, instead of rooted vines. Defendants contend that this was not a compliance with the contract, which calls for grape vines. They insist that a vine includes the root— is an entire plant. Upon this subject expert testimony was admitted. It was also shown that vineyards were sometimes planted with cuttings and sometimes with rooted vines. Some witnesses thought the words "grape vines" necessarily meant

a rooted vine, and some that it excluded the idea that the vine was rooted. The dictionaries give as the first meaning of the word "vine" a plant with a trailing or climbing stem; but they also apply the word to the trailing stem in contradistinction to the plant, and we all know that the word is so applied in common usage. As the words "grape vine" might mean either, and both are used in planting vineyards, I think plaintiff was at liberty under his contract to use either. It was proper to show how vineyards are planted, but, since the words were not used in any special or local sense, I think the meaning of the words was not a matter to be established by expert testimony.

Appellant complains of an order of the court striking out certain evidence given by Mitchell, a witness for defendants. The witness had stated that he procured some fifteen thousand cuttings from the lot from which plaintiff obtained his; that he set them out on land similar to lots 49 and 50 and in the vicinity; that his were well watered and cared for, and yet nearly all died; and was proceeding to specify the character and degree of care given them, when he was interrupted by the court, who ordered the testimony stricken out, and instructed the jury not to regard it, saying that it was in regard to a matter entirely collateral, and had no bearing on the case. Counsel for the defense then stated that he had other testimony to the same point which he asked might be considered as offered, excluded, and exception noted. This was agreed to. That the evidence was upon a collateral issue is not conclusive against its relevancy. The question was whether the fact it tended to establish would tend to prove or disprove the fact at issue. Evidence is relevant not only when it tends to prove or disprove the precise fact in issue, but when it tends to establish a fact from which the existence or nonexistence of the fact in issue can be directly inferred. I think the evidence was relevant and material. Plaintiff claimed that his vines died for lack of water which defendants agreed to furnish, but did not. The evidence excluded tended to show that the vines would not have lived had water been furnished. If this were established, plaintiff could not recover the cost of vines set in lots 49 and 50, nor for his labor in setting them, nor damages for the loss of his nursery, which he claims he would have made had he been permitted

to complete his contract. The probative force of the evidence was for the jury. Plaintiff was to furnish the grape vines.

The question as to the necessity for a rabbit-tight fence was probably sufficiently discussed on the former appeal. Of course, the rule is well established that in construing a contract a court is not only to take it by all its corners, but is to be placed in the seats of the parties when it was made. In other words, it is to be construed in the light and with the knowledge of surrounding circumstances. If circumstances were shown at the trial which did not appear in the complaint, in the light of which the court construed the contract on the former appeal, and which would justify a different construction, that ruling would not then constitute the law of the case. The court should now interpret the contract in the light of all the facts, and, so far as other facts throw light upon it, the court is not bound by the ruling based upon the allegations of the complaint in overruling the demurrer.

I think the court erred in its ruling in regard to evidence that a fall plowing of the land was necessary. The ruling and remark of the court went beyond the necessities of the case, and amounted to an instruction to the jury that plaintiff was entitled to a judgment unless defendants furnished water on Hartley avenue. The court said: "I will instruct the jury, if the defendants did not furnish water on Hartley avenue according to the contract, the plaintiff is entitled to damage for a breach of the contract. You will direct your evidence to that point." This took from the jury at once all consideration of the question as to whether plaintiff had failed to perform the conditions of the contract on his part. Indeed, the ruling prevented defendants from putting in proof upon the subject of the claim that plaintiff did not plow, level, or prepare the land in 1888, or to rebut evidence on the part of plaintiff that they had waived such performance. It also ignored the evidence given by defendant Olds to the effect that plaintiff had consented to the furnishing of water on Clinton avenue.

It is fair to say that the formal instructions do submit to the jury the question as to whether plaintiff was in default when the notice was served. The remark was not intended to have any bearing upon that question. Still apparently it did, and we cannot say that it did no injury to defendants.

Some further questions are raised, but I think none which need discussion here. I think the order and judgment must be reversed and a new trial had.

I concur: Searls, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed and a new trial ordered.