Argued March 4; reversed March 25, 1947

# SMITH *v.* WILLIAMS

(178 P. (2d) 710)

*H. E. Slattery,* of Eugene, for appellant.

*Frank S. Senn,* of Portland (Senn, Recken & Recken, of Portland, and David B. Evans, of Eugene, on the brief), for respondent.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY and WINSLOW, Justices.

WINSLOW, J. (Pro tempore)

This action was commenced by appellant, by and through his guardian *ad litem,* against respondent, who is likewise a minor and who appears by and through

his guardian *ad litem,* for recovery of damages for personal injuries growing out of an automobile accident which occurred a few miles south of Monroe on July 30, 1944, on what is known as the Old Territorial Highway. Appellant was riding in a car being driven by respondent at the time of the accident. Appellant went to sleep about the time they passed through Monroe going south, and the accident happened after they had travelled some five or six miles therefrom when respondent likewise went to sleep and the car went off the road causing the accident.

Appellant filed a complaint in which he attempted to assert what he terms two causes of action. In the first cause of action he attempts to recover on the ground of gross negligence. In the second cause of action he attempts to recover, for the same injuries growing out of the same accident, on the ground of ordinary negligence. In both statements he claims that he was a paid passenger at the time of the accident having purchased a $1.10 worth of gasoline for respondent.

Respondent filed a motion to require appellant to elect as to whether he would proceed on the theory of gross negligence or upon the theory of ordinary negligence. The court sustained this motion, and appellant elected to proceed on the theory of ordinary negligence. In that state of the record, the case came on for trial. At the conclusion of appellant's case, a motion for involuntary nonsuit was made for and on behalf of respondent. This motion was sustained by the trial court and judgment was entered accordingly from which appellant has taken this appeal.

It will thus appear that there are two questions before the court: (1) We are asked to review the ruling

of the court sustaining respondent's motion requiring appellant to elect whether he will proceed on the theory of gross negligence or of ordinary negligence. (2) We are also asked to review the ruling of the court granting the motion for nonsuit. We shall consider these questions in the order suggested.

Appellant has termed the statements contained in his complaint as separate causes of action and has separately stated them. An examination of the authorities discloses the fact that even courts sometimes refer to such a pleading as a statement of two causes of action. It is believed, however, that this language is not precisely used. As a matter of fact, the effect of appellant's pleading was to plead one cause of action in two different manners, or by two counts as it might be termed. It is the same cause of action stated in different forms. *Richardson v. Investment Company*, 124 Or. 569, 571, 264 P. 458, 265 P. 1117; 1 Am. Jur. 404; 49 C. J. 509, 510, 511, 512.

The rule is stated thus in 38 Am. Jur., Negligence § 275:

> "While a cause of action based upon one degree of negligence differs from a cause sounding in another degree, where degrees of negligence are recognized, the two causes of action are not inconsistent in the sense that the choice of one absolutely waives the other. Moreover, under the more modern statutes governing pleading, the plaintiff may join in one complaint counts of ordinary and gross negligence arising out of one state of facts * * *."

In the case of *Austin v. Chicago, M. & St. P. R. Co.*, 143 Wis. 477, 128 N. W. 265, 31 L. R. A. (N. S.) 158, the court had this question under consideration. The court stated the problem in this language:

> "If a person, owing a duty to another respecting that other's personal safety, violates it, inflicting

upon such other corporeal injury, under such circumstances that it is difficult for him, by the aid of professional advice, to satisfactorily determine whether the violation was characterized by what is known as gross negligence, or by the milder type of wrong denominated ordinary negligence—may such person have the wrong, whatever be its nature, redressed in a single action to recover for his injury, pleading in one cause of action liability on the ground of gross negligence and in a second on the ground of ordinary negligence? That is the broad question raised by the appeal."

The court said among other things:

"That the doctrine of election does not apply to a mere choice of a wrong remedy, is familiar. Fuller-Warren Company v. Harter, 110 Wis. 80, 85 N. W. 698, 53 L. R. A. 603, 84 Am. St. Rep. 867; Clausen v. Head, 110 Wis. 405, 410, 85 N. W. 1028, 84 Am. St. Rep. 933. If the idea that the intent of the statute was to exclude joining causes of action upon that species of inconsistency, it is easy to see that it is inefficient to justly respond to the needs of such situations as the one under discussion and many others.

"The inconsistency precluding the joining of causes of action, which we find, in general treated in the books, is of such character that the doctrine of fatal election above indicated applies. For instance it is said in Maxwell on Code Pleading at 345:

" 'If the vendor in his petition seeks to recover a judgment for the unpaid purchase money, and also to have the contract cancelled because of the failure of the vendee to pay the amount due, the causes of action cannot be joined, because the action to recover the amount due is an affirmance of the contract.'

"Treating the same subject it is said, in Bliss on Code Pleading at 122 (3d Ed.): Causes of action

to be joined must not be inconsistent in that 'one cause of action, if valid, should not show the others to be bad'.''

The court then proceeds to discuss many cases and then summarizes its conclusion in this language:

"The subject is treated at some length in Pom. Code Rem. (4th Ed.) § 467, Whitney v. Ch. & N. W. R. Co., 27 Wis. 327, being cited as the leading authority, followed by many others. The general idea is that where there is but a single demand the plaintiff may, acting reasonably, join in his complaint two counts for the purpose of redressing the matter, stating each count in the form of a distinct cause of action and so that they differ from each other so far as necessary to meet the two aspects of the situation from the plaintiff's viewpoint."

In *Waechter v. St. Louis & M. R. R. Co.,* 113 Mo. 270, 88 S. W. 147, the supreme court of Missouri gave consideration to this question. The complaint set up the matter in different forms called counts. There was an attempt to make the plaintiff elect. The court disposed of the matter in this language:

"We do not think the court erred in refusing to compel the plaintiff to elect upon which count he would proceed. As before stated, there was but one cause of action, though stated in different ways. The evidence, it seems to us, would have justified a verdict on either count. It shows that the motorman in charge of defendant's car was either extremely negligent, or, worse, was reckless of human life. Where there is evidence supporting two theories, upon either of which the plaintiff might recover, and both are properly pleaded, the plaintiff is entitled to have both theories submitted to the jury, and it would be a denial of his legal rights to withdraw either from the jury's consideration."

The case of *Tsuboi v. Cohn,* 40 Idaho 102, 231 P. 708, 39 A. L. R. 851, involved an action to recover damages for destruction of certain sugar beets and sugar beet tops by defendants' cattle. The complaint stated the matter in counts. In the first count the plaintiff attempted to recover because of the failure of defendants to comply with the statutory duty regarding fencing. In the second count it was alleged that defendants "deliberately, knowingly and intentionally caused their cattle" to enter upon plaintiff's land and destroy the beets. A motion to elect was made. The court said:

"The court properly overruled appellants' motion to elect, complained of in their 3d and 23d assignments of error. It is insisted that the two causes of action set forth in the amended complaint cannot be joined. Both causes of action are for the same amount, although but one recovery is sought. Both arose out of the same transaction or transactions connected with the same subject of the action. Both affect all the parties to the action and do not require different places of trial. C. S. § 6688. C. S. § 6687, provides, inter alia, that:

" 'The complaint must contain: * * * 2. A statement of the facts constituting the cause of action, in ordinary and concise language.'

"In the case of Remy v. Olds, 4 Cal. Unrep. 240, 34 P. 216, 21 L. R. A. 645, it is held:

" 'A cause of action may be stated in different counts in order to meet any possible phase of the evidence, and the pleader will not be required to elect on which count he will proceed.'

"In the case of Spotswood v. Morris, 10 Idaho 129, 77 P. 216, it was also held that:

" 'When a plaintiff has two or more distinct and separate reasons for the right to the relief he asks, or when there is some uncertainty as to the

ground of recovery, the complaint may set forth a single claim in several distinct counts.''

This court has had occasion to deal with the same subject.

In *Paget v. Cordes,* 129 Or. 224, 277 P. 101, the complaint contained two counts. The first count was for assault and battery. The second count charged that the defendants ''wickedly, wantonly, maliciously, wrongfully, forcibly and unlawfully'' imprisoned the plaintiff in the city jail of the City of Portland. The court held that the question of whether or not there was one cause of action or two causes of action was a very close one. The court permitted the pleading to stand and quoted from Phillips on Code Pleading (1st ed. 1896) with reference to the matter as follows:

''207. Duplicate Statement, Continued.—The rule just stated is not an inflexible rule, and is sometimes made to yield to the demands of justice; for it is a distinguishing merit of the Reformed Procedure, that it makes formal requirements subservient to the rights of parties and the ends of justice. The reformed system is a substitute for both common-law pleading and equity pleading; it has not taken away any right; it has affected only the manner of stating a right. * * * If a plaintiff has two distinct grounds for a single recovery, he may now, as before, make both grounds available in one action; and so, if he has but a single right of action, resting upon one or the other of two grounds, and cannot foreknow which ground may be established by the evidence, he ought to be allowed, now as formerly, so to frame his complaint as to adapt it to the possible state of the proof, if this can be done without embarrassment to the defendant.

''In many of the more recent cases, this view has obtained as being at once the more rational, more conducive to the ends of justice, and consistent

with the spirit and purpose of the Reformed Procedure; and it may safely be said that the true rule, resting upon principle, and supported by the weight of authority, now is, that where a plaintiff has a single right of recovery, that may rest upon one ground or upon another, according to the facts to be shown by the evidence, and he can not safely foretell the precise nature and limits of the defendant's liability, to be developed upon the trial, he may state his right of action variously, in separate causes of action.''

Again, in *State, for Use of Sauers, v. C. J. Montag Company,* 132 Or. 587, 286 P. 995, this court held that it was error for the trial court to compel an election where a materialman attempted to recover upon express contract and upon quantum meruit, and said:

''We think that, for reasons which will now be stated, the trial court erred in compelling plaintiff to elect whether he would rely upon an express contract fixing the price, or upon quantum meruit. Our code provides that a plaintiff may unite several causes of action in the same complaint when they all arise out of contract, express or implied. But it also provides that when so joined in the same complaint they must be separately stated. Hence, if the transaction complained of—the sale and delivery of the same lumber, for which plaintiff could have but one recovery—entitled plaintiff to sue on the express contract fixing the price, or on quantum meruit, then the two causes of action, if separately stated, could be united in the same complaint. Assuming for the purpose of this decision that two causes of action, one on the express contract and one on quantum meruit, were united in the complaint and not separately stated, then since both could be properly joined in one complaint if separately stated, defendants' remedy was not by motion to compel the plaintiff to elect but was that stated in

Pomeroy's Code Remedies (5th Ed.), §§ 340 and 341. * * *. * * *

"Had plaintiff desired to do so, he could properly have alleged in the complaint an express contract stipulating the price and an implied contract for the reasonable value of the lumber by stating the same separately and, if the same had been stated separately, he could not have been compelled to elect whether to proceed upon one or the other. See 5 Enc. Pl. & Pr., §§ 321-324; 1 Bancroft, Code Pleading, §§ 108 and 918; Harvey v. Southern Pacific Co., supra [46 Or. 505, 80 P. 1061.]" ·

Again, 41 Am. Jur. 363, speaking of the same subject, says:

"It is a familiar rule of pleading that when the plaintiff has two or more distinct reasons for obtaining the relief sought, or when there is more or less uncertainty as to the grounds of recovery or as to the exigencies of proof, the petition may set forth a single claim in more than one count. The pleader may state his case in as many ways as he sees fit in separate counts in order to meet any possible phase of the evidence, and he will not be required to elect on which count he will proceed."

■ We therefore hold that the court committed error in sustaining respondent's motion to require plaintiff to elect.

We might appropriately stop here. But inasmuch as this ruling necessitates a retrial of this case and inasmuch as both parties hereto have fully briefed the second question, which will have to be decided on such retrial, we shall now dispose of that question also.

■ In considering the second question, a preliminary matter should be disposed of. It is contended by appellant that there was an agreement between appellant and respondent by the terms of which appellant pur-

chased five gallons of gasoline for respondent for the price of $1.10, and that in consideration thereof respondent was to drive appellant around Eugene for a while and then take him home. It is contended by appellant that by virtue of this arrangement he was a paid passenger. The evidence shows that appellant did buy the gasoline and that respondent did drive around Eugene a while and then took appellant home, at Elmira, after which they went back to Eugene. From Eugene they went to Junction City where they picked up two marines, took them to the marine base south of Corvallis and then returned home going south to Monroe and on toward Elmira where the accident occurred. The evidence shows that the boys attended the Elmira High School together and were neighborhood friends.

We hold that, at least after they left appellant's home, the relationship between the parties was a social one and that appellant was a guest of respondent. *Melcher v. Adams,* 174 Or. 75, 83, 146 P. (2d) 354; *Jasper v. Wells,* 173 Or. 114, 120, 144 P. (2d) 505; *Syverson v. Berg,* 194 Wash. 86, 77 P. (2d) 382.

We shall now give attention to the question of whether or not there was any evidence in the record sufficient to go to the jury with reference to appellant's charge that respondent was guilty of gross negligence. Summarized the charge is that respondent was driving a bantam automobile in the night time or early in the morning over a part of the Old Territorial Highway south of Monroe, which was surfaced with loose rock and gravel, at a speed of 55 miles per hour, and while so driving he "had become very sleepy, knew that he was sleepy, knew that he was liable to fall asleep and that notwithstanding the foregoing facts he continued

to drive the said automobile and did fall asleep and permitted the said automobile to run off the said public highway and turn over."

There is substantial evidence that the road was of the character alleged; that respondent was driving over said road at a speed upward of 50 miles; that he became sleepy, knew he was sleepy, but thought he could make it home and continued to drive and did fall asleep causing the car to leave the road; that this occurred about 4:00 in the morning; and that the boys had been out with the car all night and had made the trips referred to above.

Is this evidence of gross negligence?

"Purves Stewart, in his 'Diagnosis of Nervous Diseases,' 3d ed p. 423, thus describes the chief phenomena of ordinary healthy sleep: 'Firstly, there is diminution and then loss of conscious recognition of ordinary stimuli, such as would ordinarily attract our attention, whether these stimuli be derived from the outer world or from within the sleeper's own organism. There is also, as consciousness is becoming blunted, a characteristic and indescribable sense of well-being. Voluntary movements become languid and ultimately cease and the muscles of the limbs relax. Meanwhile there develops double ptosis or drooping of the eyelids; the pupils contract; the respiratory movements become slower and deeper, the pulse is slowed, the cutaneous vessels dialate to a slight extent and the general temperature of the body falls, whilst many processes of metabolism, such as those of digestion and of certain secretions are retarded'." *Bushnell v. Bushnell,* 103 Conn. 583, 131 A. 432, 44 A. L. R. 785, 791.

■ In *Boos v. Sauer,* 266 Mich. 230, 253 N.W. 278, the supreme court of Michigan had occasion to give consideration to the question with which we are dealing.

While in that case they held that the driver did not have such pre-warning of a likelihood that he was going to sleep as to render him guilty of gross negligence, nevertheless the rule laid down with reference to the matter is applicable here. The court said:

"Gross negligence requires willful or wanton misconduct. Findlay v. Davis, 263 Mich. 179, 248 N. W. 588. To constitute gross negligence in falling asleep while driving there must have been such prior warning of the likelihood of sleep that continuing to drive constitutes reckless disregard of consequences. There must be an appreciation of the danger of falling asleep or circumstances which would cause a reasonably prudent person to appreciate it and proceeding in defiance of results. It has been held that prior warning may be by way of having before gone to sleep or dozed off. Manser v. Eder, 263 Mich. 107, 248 N. W. 563; Potz v. Williams, 113 Conn. 278, 155 A. 211. Without discussing the distinction between ordinary and gross negligence, it was held in Coconower v. Stoddard (Ind. App.) 182 N. E. 466, 467, a question for the jury where defendant had worked all day and driven most of the night without sleep."

In the instant case the record fairly establishes that respondent did have a pre-warning of his condition.

In *Jones v. Pasco,* 179 Va. 7, 18 S. E. (2d) 258, 138 A. L. R. 1385, the parties had been driving all night, one driving part time and the other part time. The accident happened about 5:00 a. m. The driver went to sleep and went off the road. The verdict was for the plaintiff, and the trial court set it aside and entered a judgment for the defendant. The supreme court of Virginia reversed the action of the trial court, reinstated the verdict of the jury and entered judgment thereon in favor of the plaintiff. In passing upon the

matter the court quoted from *Blood v. Adams,* 269 Mass. 480, 169 N. E. 412, 413, as follows:

"In the exercise of ordinary care an operator of an automobile must be able to anticipate what is coming, to see what is present and to remember what is past. Voluntarily to drive an automobile on a public street at any time of day or night with eyes closed, or to yield to sleep while operating such kind of dangerous machine as is an automobile on a public highway, is to be guilty of a degree of negligence exceeding lack of ordinary care, and is a manifestation of recklessness which may be found by judge or jury to be gross negligence within any reasonable definition of that phrase."

In *Marks v. Marks,* 308 Ill. App. 276, 31 N. E. (2d) 399, the evidence showed that the driver became sleepy, knew he was sleepy and notwithstanding that fact continued to drive until he actually fell asleep. It was held this was evidence of gross negligence.

Likewise in *Barmann v. McConachie,* 289 Ill. App. 196, 6 N. E. (2d) 918, the driver of the car knew he was sleepy but kept on driving at a speed of about 40 miles per hour. He fell asleep and the car went off the road and hit a telephone post. He thought he could make it home before he fell asleep. The court said:

"He undertakes the struggle with himself of keeping awake until he can reach Moffat's, a distance of two or three miles. Of course in so doing he did not intend that plaintiff should be injured by reason of his act but his conduct showed such an intentional disregard of the duty that rested upon him to exercise care and such a conscious indifference to the consequences that might follow from his act that the jury could readily find him guilty of wilful and wanton misconduct."

In *Stotts v. Blickle,* 220 Cal. 225, 30 P. (2d) 392, the driver noticed that his car did not steer properly but failed to have it repaired when he reached his destination. Then on his return trip he felt drowsy and tired because of lack of sleep the night before. The car still behaved erratically. While driving at about 30 miles per hour, the car left the pavement and collided with a pole. It was held that this was evidence of gross negligence.

In *Carvalho v. Oliveria,* 305 Mass. 304, 25 N. E. (2d) 764, the driver fell asleep at a point where there were no other cars on the road, drove the car off the road and hit a pole. The driver admitted that he fell asleep, did not see the pole and that previously he had dozed off several times. The court said:

"The jury could find that the accident resulted from the fact that the defendant went to sleep. They could further find that he had been asleep and had regained consciousness several times before the accident and that he knew or should have known that he was not in a condition to continue driving. Without undertaking to lay down a rule that falling asleep is always evidence of gross negligence, at least it may be said that the danger of driving while heavy with drowsiness is so extreme and so self-evident that one who with knowledge that he is in that condition persists in driving without making the necessary effort to fully to arouse himself can be found to be grossly negligent."

In *Reynolds' Adm'x v. Waggener,* 271 Ky. 300, 111 S. W. (2d) 647, the driver fell asleep and permitted the car to run off the highway and injure his guest. It was shown that before he started on the trip, the driver was sleepy and walked around the automobile to arouse himself and cautioned the other occupants of the car

that he was sleepy. It was held that this was evidence of gross negligence.

In *Manion v. Waybright,* 59 Idaho 643, 86 P. (2d) 181, the driver was driving at about 50 miles per hour. He came to a curve and failed to negotiate it causing the accident. He admitted that he fell asleep. He claimed he went to sleep without any warning or sense of drowsiness. The court nevertheless held this was evidence of gross negligence.

In support of his contention that the evidence was not sufficient to go to the jury on the ground of gross negligence, respondent cites the following cases: *LaVigne v. LaVigne,* 176 Or. 634, 158 P. (2d) 557; *Ross v. Hayes,* 176 Or. 225, 157 P. (2d) 517, 158 A. L. R. 452; *Rauch v. Stecklein,* 142 Or. 286, 20 P. (2d) 387; *Kaplan v. Kaplan,* 213 Iowa 646, 239 N. W. 682; *Boos v. Sauer,* supra; *Krueger v. Krueger,* 197 Wis. 588, 222 N. W. 784; *DeShelter v. Kordt,* 43 Ohio App. 236, 183 N. W. 85.

In *LaVigne v. LaVigne,* supra, the driver fainted. There was no evidence to show that the driver had any warning of the approach of his sudden illness. It was held that this was not evidence of gross negligence. The facts of the case are not sufficiently akin to the controversy here in question to be of any assistance one way or the other.

In *Rauch v. Stecklein,* supra, the driver was coming from Mt. Hood to Mt. Angel. He was driving from 27 to 30 miles per hour when he rounded a curve. As he rounded the curve, he got off onto loose gravel and the car slipped into the ditch. He tried to right it, but the car got out of control and went into the ditch causing the accident. The facts are not analogous.

In *Kaplan v. Kaplan,* supra, the driver fell asleep at the wheel causing the accident. There was no evidence to show that the driver had any warning of his sleepiness except that he admitted he was tired and that he had not slept the night before. The court held that under the circumstances the fact that the driver fell asleep was no different than if he had been seized with a fit of epilepsy, and that the case was insufficient to go to the jury on the issue of gross negligence. The court added, however:

> "By so holding under this record, we do not decide that there might not be facts and circumstances in some other case amounting to recklessness because the driver of an automobile went to sleep at the wheel."

The case of *Boos v. Sauer,* supra, has already been referred to.

In *Krueger v. Krueger,* supra, a driver had had warning of his sleepiness but continued to drive, but drove slowly around 15 miles an hour, fell asleep, ran off the side of the road, overturned and injured the driver's father. The court held that this did not constitute actionable negligence against the defendant. It is not clear from the opinion what degree of negligence was required.

In the case of *DeShelter v. Kordt,* supra, the only evidence with reference to the driver being asleep was his own testimony. He was asked if he fell asleep and answered: "Don't think I was; if I was, might have been momentarily; can't say I was; if I was, I don't remember." There was evidence that he had been sleepy before. The case was not disposed of on this ground and is clearly distinguishable from the facts in the case at bar.

■ We hold that evidence that respondent drove a bantam automobile over a road which was surfaced with loose rock and gravel at a speed upward of 50 miles per hour at 4:00 in the morning while he was sleepy, knew he was sleepy and notwithstanding this knowledge continued to drive and did go to sleep thereby permitting the car to leave the road and turn over, is sufficient to take this case to the jury on the issue of gross negligence. We hold this constitutes evidence of conduct which indicates an indifference to the probable consequences of the act; a reckless disregard of the rights of others.

In *Rauch v. Stecklein*, supra, Justice ROSSMAN in discussing the meaning of the Oregon guest statute, § 115-1001, O. C. L. A., [§ 55-1209, O. C.] used this illustration:

> "Likewise, where a motorist, without waiting for the red traffic light to change to green, proceeded through the intersection, his disregard of the traffic regulations warranted the finding that his act was a wilful and reckless one * * *."

In this case when respondent discovered his condition and knew that he was sleepy and yet continued to drive, he likewise disregarded a danger signal.

■ The motion for nonsuit likewise raised the question of contributory negligence because of the fact the appellant was asleep at the time of the accident.

*Howse v. Weinrich*, 133 Kan. 132, 298 P. 766. A guest went to sleep. It was charged that by virtue of that fact he was guilty of contributory negligence. The court said:

> "This court cannot state a hard and fast rule

by which it may be determined whether a sleeping guest is negligent or not negligent. If the guest knows the character of the automobile driver, knows that the driver's experience and skill qualify him to deal with the road and traffic conditions likely to be encountered on a particular journey, and has no reason to anticipate that unusual or extraordinary situations will arise, it may be clear the guest would not be at fault if he took a nap."

The evidence in this case shows that appellant dropped off to sleep about the time they went through Monroe. With reference to that matter he testified:

"Q  And were you getting sleepy at that time?
"A  Yes, I was getting sleepy.
"Q  Was Dave getting sleepy?
"A  He didn't mention it.
"Q  He didn't look it?
"A  No.
"Q  Did he seem to be driving all right?
"A  Yes, sir."

In *Bushnell v. Bushnell,* supra, a guest went to sleep. The evidence showed that he had no information to the effect that the driver was sleepy or was liable to go to sleep. The court held that it could not be held as a matter of law that the guest was guilty of contributory negligence for having gone to sleep.

In *Malone v. Clemow,* 111 Cal. App. 13, 295 P. 70, the guests were all asleep. The court said:

"The fact that one or more of the guests was asleep at the time of the collision does not constitute negligence as a matter of law, for, as we have already seen, there was no obligation on the part of the guests to exercise an oversight as to the way in which the automobile was to be operated, or keep a lookout for impending danger. Furthermore, the

evidence shows that Mrs. Clemow was an experienced driver, and the guests had no reason to complain of her driving. Mrs. Clemow testified herself that at the time of the accident she was not tired, but was in fact refreshed by the cold air of the bay.

"In McDermott v. Sibert, 218 Ala. 670, 119 So. 681, the court used the following language which is particularly appropriate in the cases at bar, 'When a guest is asleep it is entirely a question for the jury to determine whether or not he could have done anything if awake; or whether it considered him contributorily negligent in the same regard as if he were not asleep'."

■ We hold that it is a question of fact as to whether or not appellant was guilty of contributory negligence by reason of the fact he was asleep at the time of the accident. Even if the jury should find that this constituted negligence upon the part of appellant, still it is a question of fact as to whether or not that negligence proximately contributed to the happening of the accident. 38 Am. Jur. 898, and cases cited in notes 4 and 5. The question would still be: Could he have done anything if awake?

■■ One other question is raised by the motion for nonsuit. It is contended that the parties were on a joint venture and that the negligence, if any, of the driver is imputable to the guest. This rule, however, is not available to respondent in a case such as we have here for consideration for the reason stated in 38 Am. Jur. 925 as follows:

"The doctrine of joint enterprise whereby the negligence of one member of the enterprise is imputable to others, resting as it does upon the relationship of agency of one for the other, does not apply in actions between members of the joint

enterprise and does not, therefore, prevent one member of the enterprise from holding another liable for personal injuries inflicted by the latter's negligence in the prosecution of the enterprise. In other words, the doctrine of common or joint enterprise as a defense is applicable only as regards third persons and not parties to the enterprise. Ordinarily negligence on the part of a member of a joint enterprise, resulting in injury to the other member, renders him liable for the injury.''

The judgment of the lower court is reversed, and the case remanded for such proceeding as may be taken and had not inconsistent with this opinion.