63 S.E.2d 190 (1951)
233 N.C. 99
ROLLISON
v.
HICKS.
No. 312.
Supreme Court of North Carolina.
February 2, 1951.
*192 Bernard B. Hollowell, Bayboro, and Rodman & Rodman, Washington, for plaintiff-appellee.
Barden, Stith & McCotter, New Bern, for defendant-appellant.
ERVIN, Justice.
The exception to the refusal of the trial court to dismiss the action upon a compulsory *193 nonsuit raises this question at the threshold of the appeal: Was the evidence introduced by plaintiff at the trial sufficient to carry the case to the jury, and to support its finding on the first issue, i.e., that the plaintiff was injured by the actionable negligence of the defendant?
The plaintiff's case is predicated on the theory that the defendant drove the truck at an excessive speed in a place outside a business or residential district, and thereby proximately caused personal injury to the plaintiff.
The testimony shows that the defendant did not exceed the absolute speed limit of forty-five miles per hour fixed by the Statute for the truck in the place where it was being driven. G.S. § 20-141 as rewritten by Section 17 of Chapter 1067 of the 1947 Session Laws. This fact is not sufficient of itself, however, to exonerate the defendant from liability to the plaintiff. The statute cited expressly provides that "The fact that the speed of a vehicle is lower than the foregoing limits shall not relieve the driver from the duty to decrease speed * * * when special hazard exists * * * by reason of * * * highway conditions," and that "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing."
When the evidence adduced by plaintiff at the trial is appraised in the light most favorable for him, it warrants these inferences: That the surface of Highway 55 was rough and bumpy, rendering the road hazardous for occupants of motor vehicles proceeding thereon at ordinary speeds. That the defendant knew the hazardous condition of the highway and that his employer, the plaintiff, was riding on the platform of the truck to steady its unfastened load. That the defendant was ordered by plaintiff "to drive slow". That notwithstanding his knowledge of the condition of the road and of the position of the plaintiff, and notwithstanding the order to proceed slowly, the defendant drove the truck over the rough and bumpy road at a speed of forty miles per hour when he knew, or by the exercise of reasonable care would have known, that such speed in combination with the uneven surface of the highway was likely to occasion injury to the plaintiff. That the defendant did thereby in fact cause injury to the plaintiff.
This being true, whether the defendant drove the truck on the highway at a speed greater than was reasonable and prudent under the conditions then existing, and whether such speed was the proximate cause of injury to the plaintiff were questions of fact for the determination of the jury. Howard v. Bell, 232 N.C. 611, 62 S. E.2d 323; Perry v. McLaughlin, 212 Cal. 1, 297 P. 554; Richard v. Roquevert, La. App., 148 So. 92; Anderson v. Anderson, 188 Minn. 602, 248 N.W. 35; Morgan v. Krasne, 246 App.Div. 799, 284 N.Y.S. 723; Meath v. Northern Pac. Ry. Co., 179 Wash. 177, 36 P.2d 533.
The exception to the refusal of the motion for nonsuit likewise raises this question: Was the plaintiff guilty of contributory negligence barring his recovery as a matter of law?
The test for determining whether the question of contributory negligence is one of law for the court or one of fact for the jury is restated in the recent case of Bundy v. Powell, 229 N.C. 707, 51 S.E.2d 307, 309, where this is said: "Contributory negligence is an affirmative defense which the defendant must plead and prove. G.S. § 1-139. Nevertheless, the rule is firmly embedded in our adjective law that a defendant may take advantage of his plea of contributory negligence by a motion for a compulsory judgment of nonsuit under G. S. § 1-183 when the facts necessary to show the contributory negligence are established by the plaintiff's own evidence. * * * A judgment of involuntary nonsuit can not be rendered on the theory that the plea of contributory negligence has been established by the plaintiff's evidence unless the testimony tending to prove contributory negligence is so clear that no other conclusion can be reasonably drawn therefrom. * * * If the controlling or pertinent facts are in dispute, or more than one inference may reasonably be drawn from the evidence, the question of contributory negligence must be submitted to the jury."
*194 When the plaintiff's testimony is laid alongside this test, it is manifest that the question whether plaintiff was contributorily negligent was one of fact for the jury, and not one of law for the court. Graham v. City of Charlotte, 186 N.C. 649, 120 S.E. 466; Crane Co. v. Mathes, 5 Cir., 42 F.2d 215; Agnew v. Wenstrand, 33 Cal. App.2d 21, 90 P.2d 813; Chapman v. Pickwick Stages System, 117 Cal.App. 560, 4 P. 2d 283; Wirth v. Pokert, 19 La.App. 690, 140 So. 234; Nichols v. Rougeau, 284 Mass. 371, 187 N.E. 710; Breger v. Feigenson Bros. Co., 264 Mich. 37, 249 N.W. 493; Clifton v. Caraker, Mo.App., 50 S.W.2d 758.
The evidence does not compel the single conclusion that the plaintiff had actual control and direction of the operation of the truck at the time of the accident, and in consequence participated in any negligence of the defendant in its management. It justifies the opposing inference that the defendant drove the truck over the rough and bumpy highway at an excessive speed in violation of the positive command of the plaintiff "to drive slow," and that the relative positions of the parties in the vehicle robbed the plaintiff of the physical power to protest against such speed or to order the defendant to reduce it.
Furthermore, the testimony does not impel the sole deduction that it was necessarily negligent for the plaintiff to fail to fasten the building materials to the truck, and to ride on the vacant place at the rear of the truck to prevent the windows from falling and breaking. It supports these contrary inferences: That there was no practical way to fasten the concrete blocks, doors, and windows to the platform of the truck; that the plaintiff reasonably anticipated that the concrete blocks and doors would be held in place by gravity, and that he could ride on the rear of the platform and prevent the windows from falling and breaking without substantial risk to himself provided the truck should be driven at a proper speed; that he ordered the defendant to drive the truck slowly, and reasonably anticipated that his order would be obeyed; that the plaintiff took no risk in loading the truck or in riding thereon beyond that inherent in the ordinary activities of the business in which he was engaged; and that the unanticipated and disobedient act of the defendant in driving the truck at an excessive speed was the sole proximate cause of the plaintiff's injury.
The third question posed by the appeal is whether the negligence of the defendant is imputable in law to the plaintiff so as to bar the plaintiff from suing the defendant for his personal injury. This problem arises on the exception to the refusal of the motion for nonsuit, an exception to the denial of a request for instruction, and a demurrer ore tenus.
The defendant insists initially on this phase of the litigation that the defendant operated the truck as a servant of the plaintiff, and that any negligence on his part in the management of the truck is imputable in law to his master, the plaintiff, and defeats this action.
When J. W. Cowell furnished his truck with its driver, the defendant, to the plaintiff for the performance of the latter's work, he placed the defendant under the control of the plaintiff. As a consequence, the defendant became the servant of the plaintiff while performing the plaintiff's work. Leonard v. Tatum & Dalton Transfer Co., 218 N.C. 667, 12 S.E.2d 729; Shapiro v. City of Winston-Salem, 212 N.C. 751, 194 S.E. 479.
The doctrine of imputed negligence visits upon one person legal responsibility for the negligent conduct of another. It applies, however, only in limited classes of cases. In its application to the law of master and servant, it appears in these two rules:
1. The master is liable to a third person for an injury caused by the actionable negligence of his servant acting within the scope of his employment. Dickerson v. Atlantic Refining Co., 201 N.C. 90, 159 S.E. 446; 35 Am.Jur., Master and Servant, sections 532, 543; Michie: The Law of Automobiles in North Carolina, 3d Ed., section 139.
2. The master is barred from recovery from a negligent third person by the *195 contributory negligence of his servant acting within the scope of his employment. Hampton v. Hawkins, 219 N.C. 205, 13 S.E. 2d 227; 38 Am.Jur., Negligence, section 236; Am.Law Inst. Restatement, Torts, Vol. 2, section 486.
The doctrine of imputed negligence has no application, however, to actions brought by the master against the servant to recover for injuries suffered by the former as a result of the latter's actionable negligence. Branch v. Chappell, 119 N.C. 81, 25 S.E. 783; Shaker v. Shaker, 129 Conn. 518, 29 A.2d 765; Donohue v. Jette, 106 Conn. 231, 137 A. 724; Rosenfield v. Matthews, 201 Minn. 113, 275 N.W. 698; Darman v. Zilch, 56 R.I. 413, 186 A. 21, 110 A.L.R. 826, and cases collected in the ensuing annotation; Michie, The Law of Automobiles in North Carolina, 3d Ed., section 58; 65 C.J.S., Negligence, § 161.
These differing applications of the doctrine of imputed negligence are clearly understandable if due heed is paid to a fundamental truth. One of the basic concepts of our jurisprudence is embodied in the ancient Latin maxim ratio legis est anima legis; mutata legis ratione, mutatur et lex, meaning "reason is the soul of law; the reason of law being changed, the law is also changed."
Inasmuch as the master undertakes to manage his affairs through his servant, it is just that he be charged in law with the negligent conduct of his servant acting within the scope of his employment where the rights or liabilities of third persons are involved. But it would offend justice and right to impute the negligence of a servant to his master and thus exempt him from the consequences of his own wrong-doing where the negligence proximately causes injury to a master who is without personal fault.
The defendant contends secondarily on the present phase of the controversy that he and the plaintiff were engaged in a joint enterprise in the operation of the truck, and that any negligence on his part in its management is imputable in law to his fellow adventurer, the plaintiff, and defeats this action.
The legal standing of the defendant is not improved a whit by the assumption that he and the plaintiff were engaged in a joint enterprise in the operation of the truck; for the relevant legal rule in such case is as follows: "The doctrine of joint enterprise whereby the negligence of one member of the enterprise is imputable to others, resting as it does upon the relationship of agency of one for the other, does not apply in actions between members of the joint enterprise and does not, therefore, prevent one member of the enterprise from holding another liable for personal injuries inflicted by the latter's negligence in the prosecution of the enterprise. In other words, the doctrine of common or joint enterprise as a defense is applicable only as regards third persons and not parties to the enterprise. Ordinary negligence on the part of a member of a joint enterprise, resulting in injury to the other member, renders him liable for the injury." 38 Am. Jur., Negligence, section 238. See, also, these accordant authorities: Legerwood v. Legerwood, 114 Cal.App. 538, 300 P. 144; Mencher v. Goldstein, 240 App.Div. 290, 269 N.Y.S. 846; Smith v. Williams, 180 Or. 626, 178 P.2d 710, 173 A.L.R. 1220; 65 C. J.S., Negligence, § 158; Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., sections 2373, 2868.
The legal questions presented by the remaining exceptions have been decided adversely to defendant in well considered precedents, and require no discussion.
The judgment of the Superior Court will not be disturbed; for there is in law
No error.
BARNHILL, Justice (dissenting).
I concur in the conclusion that the doctrine of imputed negligence has no application here. The record, however, leads me to disagree on the question of contributory negligence of the plaintiff. He was familiar with the condition of the road. He had charge of and supervised the loading of the truck. He knew that loose, unfastened doors and windows were on the top of the load, unprotected by any railing, and were likely to slip and slide about as the truck progressed. With this knowledge he voluntarily *196 assumed a standing position on a restricted area of the rear of the truck platform with nothing to hold to or lean against except the loose windows he was attempting to keep from falling. The position he thus assumed was obviously dangerous, and he assumed the risk incident thereto. His unfortunate injuries grew out of those risks and resulted, in part at least, from his own failure to exercise proper care for his own safety.
A review of plaintiff's own testimony, it seems to me, demonstrates the soundness of this conclusion. He himself testified to facts in substance as follows:
The truck was loaded under his supervision. The concrete blocks, shingles, and composition roof were at the bottom. Six or seven doors and about fifteen windows were on the top, the doors being to the front and the windows to the rear. The doors and windows were not fastened because he had no rope with which to tie them. The railings of the truck extended back from the cab only about one-third the length of the truck platform so that there was no railing or other protection where the windows were loaded and he was standing.
He knew that the doors and windows were unfastened and were likely to shift about and fall off. That is the very reason he assigned for assuming an insecure position on the truck platform. "We didn't have any rails around the truck, and I knew the windows could easily fall and break; we didn't have any rope to tie the load on, and so I * * * decided I would get off and hold the windows on."
While he testified defendant drove about 25 m.p.h. until he passed through Stonewall and then speeded up, this is not his full testimony in respect of the speed. He testified that he estimated the speed at the time the truck hit the "bump" at about 40 m.p.h.; he was not disturbed by defendant's driving other than the wind was blowing rather fast and getting in his face, and he had tears in his eyes and was getting cold; there was nothing unusual in the way the truck was being operated; the load was not jumping up and down for he had not been going fast enough for that.
The plaintiff was familiar with the road and knew it was rough. The "bump" in the road was not a sharp ridge. It was flat, being about 15 or 18 inches wide and several inches high, formed by the repair of a break in the pavement.
The wind was blowing, and it was the wind which caused the untied door and windows to strike plaintiff. When the truck passed over the bump "the wind caught up under one of those doors and lifted it like this and sailed it back on me * * * The windows sailed onto me and knocked me off backwards on the hard surface road." It requires a liberal construction of this testimony to support a finding that defendant was guilty of any act of negligence which proximately caused plaintiff's injuries. Grant negligence on the part of the defendant and the fact remains that plaintiff, with full knowledge of all the facts, assumed a standing position on a narrow ledge of the platform of an overloaded truck when he had nothing to which he could hold or balance himself other than the loose windows he was attempting to hold in place.
The general rule is stated in Smith v. Ozark Water Mills Co., 215 Mo.App. 129, 238 S.W. 573, 575, as follows: "Where a person voluntarily assumes a position of imminent danger when there is at hand and accessible to him a place of safety, and by reason of having taken the dangerous position he is injured, he can have no recovery against another who is also negligent because such person's negligence in taking the dangerous position is one of the direct and proximate causes of the injury and contributes thereto. In such cases it becomes the duty of the court to direct a verdict."
A person who, by his own act, subjects himself unnecessarily to danger, violates the duty imposed upon all men to exercise ordinary care for their own safety. Interurban R. & Terminal Co. v. Hancock, 75 Ohio St. 88, 78 N.E. 964, 6 L.R.A., N.S., 997; 38 A.J. 859. One cannot voluntarily put it out of his power to use due care to protect himself and then recover from others for the consequences. City of Covington v. Lee, 89 S.W. 493, 2 L.R.A., N.S., *197 481. One who rashly and unnecessarily exposes himself to danger cannot recover for injuries thus brought upon himself. Norris v. Atlantic Coast Line R. R. Co., 152 N.C. 505, 67 S.E. 1017, 27 L.R.A., N.S., 1069.
The combination of facts and circumstances which invoke the application of the same principle of law are sometimes as variable as the wind. My search has disclosed two cases substantially similar. Factually neither is quite so conclusive as here; yet both are in point. In Crider v. Yolande Coal & Coke Co., 206 Ala. 71, 89 So. 285, the plaintiff was riding on the platform of defendant's truck in a standing position, with his arm on the top of the cab. The truck ran into a hole in the road and plaintiff was thrown out and injured. The court concluded he was guilty of contributory negligence as a matter of law. In Zavodnick v. A. Rose & Son, 297 Pa. 86, 146 A. 455, one Zavodnick was standing on the open platform of a truck, holding or "hanging" to a stake or stanchion. A wheel of the truck struck a depression some six inches in depth. He was thrown to the pavement, receiving injuries which caused his death. Plaintiff, the widow, sued and recovered in the lower court. On appeal the court reached the same conclusion as in the Crider case and reversed on that and other grounds.
In the instant case there were the additional dangers of restricted space in which to stand, the loose window sash on top of the load, and the nearness to the open, unprotected rear of the platform.
This is not a case where an employee was directed or, in the course of his employment, was required to assume a position of great hazard. If it were, I might be inclined to a different conclusion, for in such cases it is sometimes difficult to appreciate or to appraise the economic pressure which compels a wage earner, in discharging his duties, to assume risks his better judgment tells him he should avoid.
The plaintiff was in full charge. He was the master. He knew the load should be fastened but he did not have the necessary rope and did not care to take the time to procure it. Instead, with full knowledge of the hazards he himself had created and being aware that the road to be traveled was rough, he voluntarily left a place of safety and assumed a precarious position, the attendant hazards of which must have been apparent to any man of ordinary prudence. Atkins v. White Transportation Co., 224 N.C. 688, 32 S.E.2d 209. He thus put it out of his power to use due care to protect himself. In my opinion the question of contributory negligence should be resolved against him. Bailey v. North Carolina R. R. Co., 223 N.C. 244, 25 S.E.2d 833; Daughtry v. Cline, 224 N.C. 381, 30 S.E.2d 322, 154 A.L.R. 789; Bundy v. Powell, 229 N.C. 707, 51 S.E.2d 307. I therefore vote to reverse.