[S. F. No. 6663.  In Bank.—August 8, 1916.]

## STELLA TANFORAN, Appellant, v. FRANK TANFORAN, Respondent.

Pleading—Cancellation of Deed—Joinder of Causes of Action for Fraud and Duress.—In an action for the cancellation of a deed made by a wife to her husband of her separate property, the complaint may join causes of action, the one proceeding on the theory that the deed was procured by the fraud of the husband, and the other that it was procured by his duress.

Id.—Joinder of Inconsistent Causes of Action.—Under our system of pleading, when for any reason the plaintiff thinks it desirable so to do, as where the exact nature of the facts is in doubt, or where the exact legal nature of plaintiff's right and defendant's liability depend on facts not well known to the plaintiff, his complaint may set forth the same cause of action in varied and inconsistent counts.

Id.—Election Between Causes of Action—Harmless Error in Compelling Election.—It was error for the trial court to compel the plaintiff to elect upon which of such causes of action she would stand, but the error was without prejudice where the election was not required until the close of the plaintiff's case, at which time no evidence had been offered in support of the abandoned cause of action.

Id.—Undue Influence—Confidential Relations Between Husband and Wife—Different Causes of Action.—A cause of action to avoid such deed for the undue influence of the husband, and particularly for that form of undue influence which is presumed to have been exerted because of the confidential relation of the parties, is distinct from a cause of action to cancel it either for his duress or for his fraud in misrepresenting the property conveyed; and a cancellation cannot be had on account of such undue influence, under a complaint which merely alleges such duress and fraud.

APPEAL from a judgment of the Superior Court of Marin County, and from an order refusing a new trial.  Edgar T. Zook, Judge.

The facts are stated in the opinion of the court.

W. W. Sanderson, for Appellant.

Joseph K. Hawkins, Edward C. Harrison, and Maurice E. Harrison, for Respondent.

HENSHAW, J.—Plaintiff sued, seeking a judgment canceling a deed which she had made to her former husband, and compelling a reconveyance to herself of the property so deeded. Her complaint charged in two counts. In both it is declared that the property so conveyed was her separate property owned by her in fee, subject to a life estate in her mother. This by the pleadings is admitted. In the first count she charged that differences having arisen between herself and her husband they had agreed to a separation, and had further agreed that the defendant would pay to the plaintiff upon such separation the sum of one thousand dollars, and for this sum the plaintiff would execute to her husband her deed conveying to him all of her right, title, and interest in and to the community property. The husband, the defendant herein, caused the articles of separation and the deed to be drawn, and they were presented to her in a notary's office for execution. Plaintiff said to the defendant that she was too sick to read the documents and asked the defendant to state what the deed contained. The defendant then falsely and fraudulently represented to her that the deed was a deed to the community property which she was to execute in accordance with the understanding of the parties. Believing this, she did so execute the deed, and thereafter discovered that the deed was not a deed to the community property, but was a deed to all her separate property. These false representations she relates were made upon the 18th of February, 1909—the date of her execution of the deed. In her second count she sets up that the husband compelled her to execute this deed of her separate property under duress, on that day and for several days prior thereto threatening "to kill and murder plaintiff unless plaintiff would execute and deliver to defendant a deed granting and conveying to the defendant all her right, title, interest and estate in and to" her separate property, and she alleges that she was impelled to execute and did execute this deed under her fears caused by these threats of her husband.

All these matters were denied by the husband, whose answer and whose evidence were that shortly prior to the 18th of February he discovered that his wife was unfaithful. They had one child—a daughter. They agreed to separate. The wife's estate in her separate property was not an estate in enjoyment, and consequently the wife was receiving no im-

mediate benefit from it; that his wife said that she must have
money and was going to sell her interest; that he said if she
was going to do this he would give her one thousand dollars
for it and hold the property so that their daughter might in
time have and enjoy it; that under these circumstances and
with full knowledge of the deed and of its contents, his wife
executed the deed and received the thousand dollars.   Sub-
sequently, as the husband and wife had contemplated, he
brought his action of divorce, and then gave to her five hun-
dred dollars for her interest in the community property.

Having thus outlined the husband's defense, we may in
similar manner set forth the testimony of the wife.   She
states that shortly before the execution of the deed domestic
trouble had arisen and she and her husband had agreed to
separate.   Her husband told her that she "would have to give
him a deed to our little girl of what was coming to me out of
my mother's estate.   I looked at him and said, 'What did you
say?'   He said, 'Before we do any business in settling up our
estate, you have got to deed to me what is coming in your
mother's estate.'   I said, 'You certainly have got your nerve.
What has what is coming to me got to do with ourselves?'
And he said, 'It don't make any difference; you have got to
deed to our little girl what is coming to you from your
mother's estate.'   I did not consent to it.   He told me he
wouldn't give me anything of the community property, and I
said, 'You are not to take from me what don't belong to me
[referring to my interest in my mother's estate], and you are
not entitled to that in any way, shape, or form.'   When he
found I wouldn't agree with him to do anything on this deed,
I said, 'You can keep everything you have, and I will take
everything in the house that my mother gave to me, which will
cover most everything in the house, and I will go home to
her,' and later on, I think the day after, he came to me and
said, 'Have you decided to do what I want about that prop-
erty?' and I said, 'No, that property is not mine to give to
anybody.   Wouldn't that be a nice thing for my mother to
know that I did such a thing with her property?'   And he
said, 'She will never know anything about it.'   I answered,
'How can I deed the property over to Loretta without my
mother knowing it?'   He answered, 'She will never know it.'
When I told him my decision, he said, 'I will give you a thou-
sand dollars for your share of the community property, and

thirty dollars a month towards your board.' This community property consisted of a little home in town, a little money loaned out, horses and buggies. He said, 'I will have the separation papers drawn.' I said, 'You can have the separation papers drawn and bring them home and we will read the papers and talk them over together,' and he told me he would. But he did not bring any papers over to Novato. He made several trips to San Rafael or the city, but stated they were not ready, as his lawyer was very busy. He never mentioned the deed to me again.'' Her version of the happenings at the notary's office is that her husband there gave her two papers— one of the articles of separation, the other the deed. She familiarized herself with the contents of the former. She looked at the deed and said, ''I can't stay here long enough to read it, I am too sick.'' Her husband told her it was a deed to the community property, and she took his word for it, and so signed the paper.

At the commencement of the trial the court declared that the two causes of action were necessarily inconsistent, and that the plaintiff would ultimately be required to elect upon which one she stood before the defendant put in his case. Further the court stated that he would not compel this election until plaintiff had introduced all of her testimony. When this was done, and plaintiff had rested her case, defendant's attorney moved that plaintiff be required to elect upon which of the causes of action she would stand. The court granted the motion, and plaintiff's attorney declared his election to stand. upon the first cause of action—that of fraud. Complaint is made of this, and much discussion is indulged in over the question whether or not the counts are inconsistent, and whether or not, if inconsistent, the court had the legal right to compel an election. Little, however, need be said upon the matter. Our simplified method of pleading which requires merely the statement of ultimate facts will not often render it necessary for a complaint to charge in inconsistent counts. But when for any reason the pleader thinks it desirable so to do, as where the exact nature of the facts is in doubt, or where the exact legal nature of plaintiff's right and defendant's liability depend on facts not well known to the plaintiff, his pleading may set forth the same cause of action in varied and inconsistent counts with strict legal propriety. (Pomeroy's Code Remedies, sec. 467; *Remy* v. *Olds*, 4 Cal.

Unrep. 240, [21 L. R. A. 645, 34 Pac. 216] ; *Cowan* v. *Abbott,* 92 Cal. 100, [28 Pac. 213] ; *Rucker* v. *Hall,* 105 Cal. 425, [38 Pac. 962] ; *Murphy* v. *Crowley,* 140 Cal. 141, [73 Pac. 820] ; *Froeming* v. *Stockton Electric R. R. Co.,* 171 Cal. 401, [153 Pac. 712].) Since, then, inconsistent causes of action may be pleaded, it is not proper for the judge to force upon the plaintiff an election between those causes which he has a right to plead. Plaintiff is entitled to introduce his evidence upon each and all of these causes of action, and the election, or in other words the decision as to which of them is sustained, is, after the taking of all the evidence, a matter for the judge or the jury. There is, of course, a corresponding right in the defendant to move for a nonsuit upon any of these causes which may not have been adequately supported by the evidence. Therefore it must be said that the court's ruling in forcing an election was erroneous, but nevertheless it was absolutely without injury. All of plaintiff's testimony had been received. Not one word of it substantiated the count charging duress. Plaintiff could not have been injured by the election to abandon a cause of action wholly unsupported by evidence. The court, in short, would have been justified in granting a nonsuit as to this cause of action, and the election insisted on in effect did no more than this. There was left, then, to the consideration of the court the single question: Was plaintiff induced to execute the deed through the fraud and deceit of her husband? The court by its findings answered this question in the negative, and from the judgment which followed this appeal is taken.

Upon the appeal appellant's attorney does not argue with much conviction against the decision of the court in the matter of fraud and of duress. Indeed, he cannot well do so, since the latter cause of action was wholly unsupported by the evidence, and the first was decided against plaintiff under conflicting evidence. He therefore shifts his ground and advances with great earnestness the contention that the evidence clearly establishes a breach of trust, an abuse upon the part of the husband of the confidential relation existing between himself and wife—a gross advantage taken by the husband in his dealings with his wife, as evidenced by the disparity between the price the husband paid for the property—one thousand dollars—and its value, which is asserted to have been fifteen thousand dollars. Wherefore it is said that by virtue of section

2235 of the Civil Code the deed of the wife should be canceled
because of the undue influence exercised upon her by her hus-
band. That familiar code section declares that "All transac-
tions between a trustee and his beneficiary during the ex-
istence of the trust, or while the influence acquired by the
trustee remains, by which he obtains any advantage from his
beneficiary, are presumed to be entered into by the latter with-
out sufficient consideration, and under undue influence." In
this connection appellant's attorney complains grievously of
a declaration made by the court. The record discloses the
following: The court asked the attorney for plaintiff if he
would stipulate that the parties were unfriendly on the eigh-
teenth day of February, the day of the execution of the deed.
It was so stipulated. Then said the court: "The confidential
relation ordinarily presumed to exist between husband and
wife is not at issue in this action. There is no presumption
here of undue influence on the part of the husband in taking
the deed from his wife." To this declaration no response
whatever was made by plaintiff's attorney. It is quite ap-
parent that the court by this statement meant to declare what
it conceived to be the nature of the issues joined by the parties.
It is entirely unjustifiable to say that the court meant that
it would listen to nothing touching the abuse of such a con-
fidential relation if such abuse were fairly within the issues.
If the court's declaration concerning the scope of the plead-
ings and the issues did not meet the views of plaintiff's at-
torney, then was the time for him to have spoken and, if
necessary, to have amended his complaint and to have charged
by a third count the procurement of the deed by undue in-
fluence. He did not do so. It certainly can require no cita-
tion of authority to the effect that a cause of action for undue
influence as such, and particularly for that form of undue in-
fluence which is presumed to have been exerted because of the
confidential relationship of the parties, is a cause of action
wholly separate from that which would seek the cancellation of
an instrument either for fraud or for duress. True, the ex-
ecution of an instrument under such circumstances of undue
influence is a species of fraud, but it is no part of the fraud
and partakes in no degree of the character of the fraud which
was specifically pleaded. As we have said, it was open to plain-
tiff to have amended her complaint after the court had ex-
pressed its views defining what it conceived to be the questions

at issue between the parties. Plaintiff did not do so, nor make any effort to do so. The court's definition of the issues under the pleadings before it was strictly accurate, and the effort upon this appeal is to have this court treat the pleadings as sufficient to charge an abuse of confidential relations amounting to undue influence. But for the reasons given this cannot be done. It is equivalent to asking this court to decide the litigation upon the ground that the defendant exercised undue influence in procuring the making of the deed—a charge which is not found in the pleadings, upon which of course issue was not joined, and upon which necessarily the trial court made no findings.

The judgment and the order denying plaintiff's motion for a new trial are therefore affirmed.

Shaw, J., Melvin, J., Lorigan, J., Sloss, J., and Lawlor, J., concurred.