Argued October 22; affirmed December 3, 1946; rehearing
denied January 14, 1947

## AKERSON *v.* D. C. BATES & SONS, Inc.
### (174 P. (2d) 953)

*Edward J. Clark,* of Portland (Tanner & Clark of Portland on brief), for appellant.

*E. K. Oppenheimer,* of Portland (Wilbur, Beckett, Oppenheimer, Mautz & Souther of Portland on brief), for respondent.

Before BELT, Chief Justice, and KELLY, BAILEY, LUSK, BRAND and HAY, Justices.

BELT, C. J.

Plaintiff, a young lady, 18 years of age, commenced this action, through her guardian *ad litem*, to recover damages for personal injuries. At the conclusion of her case in chief, the court, pursuant to motion of the defendant, entered a judgment of involuntary non-suit. From this judgment, the plaintiff has appealed.

Defendant corporation owns and operates a public garage, in the city of Portland, in which automobiles are stored and gasoline is sold. In this six-story building is a vertical power-driven escalator used exclusively by employees in going to the various floors of the building for the purpose of driving cars down the ramp to customers. The escalator runs from the basement to the top of the building and is stopped or started by pulling on a rope suspended along side thereof. The escalator, or "man-lift", passes through a round hole about four feet in diameter in each of the floors.

Shortly prior to midnight of June 11, 1944, Carl

Kaufman, an employee of the defendant company, met his sister "Peggy" and the plaintiff at the Swan Island shipyards—where his sister was working—and drove the girls to "town" in his automobile, as they had previously planned to go to a show on this Saturday night. Kaufman's employment began at midnight, and, since time was pressing, he took the girls first to the garage, it being only a few blocks from the show. When Kaufman took over, he was the only employee in charge of the garage. It was his business to take care of stored cars and. to sell gasoline. Kaufman, however, undertook to show his sister and her friend about the office—and particularly the escalator located in a small room nearby. "Peggy" had heard her brother tell about this escalator and apparently was much interested in the manner in which it was operated. Kaufman turned on the electric switch and "Peggy" stepped on the lift first. After she got off at an upper floor, she called down to the plaintiff to "come on". Plaintiff hesitated at first about getting on the escalator but finally did so, although she knew nothing about its operation. Carl warned her that there were "only six floors". After the plaintiff had ridden by the first or second floor, she called to "Peggy", but the latter did not answer. Little light reached the upper floors, and it was very dark when plaintiff passed through the opening of the sixth floor. Plaintiff was confused and did not know how to stop the escalator, or what to do. The elevator step on which plaintiff was being lifted passed the sixth floor and continued on its upward course until plaintiff was injured by being pressed against the ceiling of the garage.

■ Viewing the evidence in the light most favorable to plaintiff and giving to her the benefit of all reason-

able inferences to be drawn therefrom, we are unable to see wherein there has been any breach of legal duty on the part of the defendant company. It is true that Kaufman was the sole employee in charge of the garage at the time of the accident, but he had no express or implied authority to invite friends into the garage for the purpose of "showing them around". It was his duty to take care of cars and sell gasoline. Particularly was he not authorized to invite his friends to use this escalator as a plaything. It was not a public conveyance, but, under the undisputed evidence, was for the exclusive use of employees. Assuming that plaintiff used the escalator with the knowledge and consent of Kaufman, the defendant, having no knowledge of her presence on the premises, could not be bound thereby unless Kaufman was acting within the scope of his real or apparent authority. This unfortunate accident occurred while plaintiff was engaged in a "frolic of her own". She was not on the premises in furtherance of any business of the defendant. She went to the garage for her own interest, convenience, or gratification. At best, she was a bare licensee to whom the defendant owed no duty to exercise due care. *Lange v. St. Johns Lumber Co.*, 115 Or. 337, 237 P. 696; 35 Am. Jur., Master and Servant, § 552.

■■ Knowledge of the presence of the plaintiff on the premises and the likelihood of her being injured by this escalator set in motion by an employee could not be imputed to the defendant since Kaufman, in permitting plaintiff to use the same, was not acting within the scope of his authority. It is fundamental that a principal is not affected with knowledge which the agent acquires while not acting in the course of his employment or which relates to matters not within the scope

of his authority, unless the agent actually communicates his information to the principal. *Castonguay v. Acme Knitting Machine & Needle Co.*, 83 N. H. 1, 136 A. 702; *Silverado S. S. Co. v. Prendergast,* 31 F. (2d) 225; *Warren v. Hayes,* 74 N. H. 355, 68 A. 193; 3 C. J. S., Agency, § 264.

■■ It is equally elementary that an employer is not liable for a tort committed by an employee while the latter is acting beyond the scope of his authority. The trespasser or bare licensee takes the property as he finds it, and, as a general rule, the only duty which the owner or possessor of the land owes to him is to avoid willful or wanton injury. 38 Am. Jur., Negligence, § 109. Plaintiff, however, seeks to invoke an exception to this general rule. She contends that an owner or possessor of land having knowledge of the presence of a trespasser or licensee in close proximity to a dangerous instrumentality thereon cannot set such force or instrumentality in motion and thereby avoid liability for injury to such person. American Law Institute, Restatement, Torts (Negligence), § 338. The rule for which plaintiff contends is thus stated in 38 Am. Jur., Negligence, § 120:

" * * * an employer incurs liability for an injury caused by his active negligence toward a person who comes upon the premises for the purpose of visiting an employee, after the presence of the visitor becomes known to the employer, regardless of whether the visitor is a licensee or a trespasser."

The fallacy of the contention of the plaintiff lies in the assumption that defendant company in the instant case knew or had any reason to believe that the plaintiff would, for her own pleasure and entertainment, go upon its premises at midnight to use an escalator enclosed in a small room.

We see no difference in principle between this case and *Monnet v. Ullman,* 129 Or. 44, 276 P. 244. In the latter case, the defendant was engaged in a dairy business and a truck was used to deliver dairy products to his customers. The driver of the truck, an employee of the defendant, without the knowledge and consent of the defendant, invited the plaintiff, a woman, to ride into town with him. While en route to town, the truck was overturned through the negligence of the driver, and plaintiff was injured. In an action to recover damages for personal injuries, this court held there was no liability on the part of the defendant for the reason that the driver of the truck had no real or apparent authority to invite plaintiff to ride.

*Holmgren v. Red Lake Falls Milling Co.,* 169 Minn. 268, 210 N. W. 1000, is particularly in point and supports the judgment of non-suit. In that case, plaintiff's wife was injured by the fall of a "one-man lift" in which she was riding in defendant's grain elevator on the invitation of the local manager in charge thereof. The "man-lift" crashed against the top of the shaft when the safety device failed to work, thereby causing the injury. The court, in sustaining judgment for defendant, held that the manager was acting beyond the scope of his authority in inviting the woman to ride on the elevator. The court said:

> "The general rule is that the master is not liable where the servant in charge of his vehicle goes beyond the scope of his employment to transport his guests for their own convenience or pleasure. * * * * * * * * That rule is particularly applicable to such a contrivance as a man-lift, a one-passenger vehicle so obviously designed for use only by employes who are experienced in its operation."

In *Silverado S. S. Co. v. Prendergast,* supra, the plaintiff was invited on board ship by the captain, and while there was injured by falling through an open hatch. The court held that the captain, in inviting plaintiff on board the ship, was not acting within the scope of his employment, and therefore the defendant was not liable in damages. It was argued that even though the plaintiff may have been a trespasser, the defendant owner, being aware of his presence, was bound to exercise care to avoid injuring him. Knowledge of the defendant of the presence of the plaintiff upon the premises was based on the assumption that knowledge of the captain could be imputed to the employer. The court, however, held that such assumption was erroneous.

In *Castonguay v. Acme Knitting Machine & Needle Co.,* supra, a school principal arranged with the manager of defendant's mill for a group of students to visit the same in connection with one of the school courses. Plaintiff, one of the students, was injured when a knitting needle on one of the machines shattered, and pierced his eye. The court held that the manager had no express or implied authority to invite visitors to enter the mill for purposes of their own, and that the plaintiff was a trespasser. Plaintiff invoked the rights of a known trespasser, but the court refused to impute to defendant company knowledge of the manager relative to the presence of the plaintiff.

■ We are convinced, as was the learned trial judge, that the doctrine of respondeat superior controls the decision in this case and that the legal principles urged by plaintiff, and as expressed by the Restatement of the Law, above cited, have no application to this factual situation. No error was committed in refusing to sub-

mit the cause to the jury. What we have said is aside from the question—unnecessary for decision—as to whether or not the plaintiff was guilty of contributory negligence as a matter of law in riding on this escalator without any knowledge whatsoever as to the manner of its operation.

The second assignment of error is predicated on the refusal of the court to permit plaintiff to testify what Kaufman said to her relative to his position with the defendant company and concerning his invitation to her to ride on the escalator. We deem it unnecessary to discuss this assignment since such evidence, if it had been admitted, would not have aided the plaintiff in establishing a prima facie case of negligence against the defendant.

The judgment of the circuit court is affirmed.