Argued October 31, 1955, affirmed February 15, petition
for rehearing denied March 14, 1956

## COOK *v.* KINZUA PINE MILLS CO. ET AL

293 P. 2d 717

*Carl G. Helm, Jr.,* and *George H. Corey,* Pendleton, argued the cause for appellants. On the brief was C. Richard Neely, La Grande.

*Maurice D. Sussman,* Portland, argued the cause for respondent. On the brief were Alexander Schneider, of Portland, and Mahoney & Fancher, of Heppner.

Before WARNER, Chief Justice, and TOOZE, BRAND and PERRY, Justices.

BRAND, J.

This is an action by Ruth Cook against the Kinzua Pine Mills Co., a corporation, and Charles Geer, seeking damages to her person on account of injuries inflicted upon her in a collision between the automobile which she was operating and a logging truck belonging to the defendant and operated by its employee, Charles Geer. The plaintiff recovered a verdict and judgment in the lower court and the defendant appeals, setting forth 19 assignments of error which are accompanied by a transcript of 342 pages. The collision occurred on a private logging road in Morrow county, Oregon. The complaint of the plaintiff sets forth her cause of

action in two separate counts, both of which, however, relate to the same operative facts and the same injury.

The first count of the complaint alleges that the plaintiff's husband, James Cook, was an employee of the defendant corporation, and on the morning of the injury he had driven to the logging show of the defendant, at the end of the logging road referred to, and to the place where he was required to be pursuant to his terms of employment. His wife rode with him and was on the return trip when the collision between her car and a logging truck of the defendant occurred. She was operating her car in a northerly direction along the logging road and the defendant was operating the truck in a southerly direction. The complaint further alleges that the plaintiff drove her vehicle off the traveled portion of the road and brought it to a stop, leaving the entire traveled portion of the road free and unobstructed for the defendant's truck to proceed in a southerly direction, and "that at said time the defendant then and there *carelessly, recklessly* and *negligently* drove said truck into and against the left door and side of plaintiff's automobile, causing severe and painful injuries to plaintiff". (Italics ours.)

The specifications of negligence were (1) in failing to operate the truck upon the traveled portion of the highway; (2) in failing to keep a proper outlook for vehicles and persons on or adjacent to said highway and particularly this plaintiff and the auto she was then and there operating; (3) in failing to operate said truck to the right of the automobile plaintiff was driving which was then and there in plain view of the operator of defendant's truck. The first specification of negligence was stricken, though we are at a loss to know why. It is alleged that the plaintiff was at the time six months pregnant, and the injuries alleged are

serious. The complaint asks for general damages and for special damages on account of hospital, medical and other expenses.

The allegations of the second count in the complaint are substantially the same as those in the first count, except that it is alleged that at said time the defendants *"with knowledge* of the presence of the plaintiff at said place, then and there *recklessly* and in a *wanton manner,* and with an *utter disregard* for the safety of plaintiff, drove, managed, and operated said truck into and against the left door and side of plaintiff's automobile", causing the injuries previously alleged, and that the injury occurred upon a private logging road. (Italics ours.)

The defendants filed a single answer to the two counts in the complaint. They admit that the accident referred to occurred upon the logging road known as the Porter Creek logging road, and admit that James Cook was an employee of the defendant and that there was a collision between the defendant's truck driven by Charles Geer and the sedan operated by the plaintiff. They deny that the plaintiff received any injuries. In their first affirmative defense the defendants allege that the road had been constructed for its use by the Kinzua Pine Mills Company and was essentially a one-way road with turnouts at intervals, and that the road was used by its trucks which were sometimes in excess of 29 feet long and 11 feet wide and weighing in excess of 16 tons and that the road was regularly traveled by such trucks, to the plaintiff's knowledge. It then alleges that the plaintiff was trespassing on the road and that trespassing was prohibited as was known to the plaintiff. For a second affirmative defense the defendants allege that the company had established the regulation that in the use of its private

roads logging trucks had the right-of-way and that such regulation was well known to the plaintiff. They also allege that the plaintiff was guilty of negligence in that she operated the automobile upon the private road; failed to keep a proper lookout for other vehicles; failed to keep her automobile under any control; failed to give the truck at least one-half of the main traveled portion of the roadway; and failed to give the right-of-way to the truck of the defendant corporation. The reply was a general denial.

■ This appeal presents an interesting problem which, in its various aspects, is made to appear by assignments of error one to eight inclusive, and 13 and 14. As we have seen, in count one, it is alleged that plaintiff's injuries were caused solely by the careless, reckless and negligent acts of defendants. In count two it is alleged that the defendants "with knowledge of the presence of the plaintiff at said place, then and there recklessly and in a wanton manner, and with utter disregard for the safety of plaintiff" drove their truck into plaintiff's automobile. It is apparent that different issues of law will arise depending on whether the evidence supports the allegations of count one or count two. These questions become important by virtue of the fact that defendants complain of the refusal of the trial court to require an election. The two counts differ in material respects. The first count which charges that defendants' acts were careless, *reckless* and negligent must be treated as an allegation of simple negligence. The mere addition of the word "reckless" before the word "negligent" did not remove the first count from the category of simple negligence. The word "reckless" appears in conjunction with the word "negligent" in most of the complaints coming to this court which are intended to charge and which have been held

to charge simple negligence. That the charge is one of simple negligence is made clear by reference to the specifications of negligence which follow the general words. They are the typical allegations of "failure" to keep a lookout and "failure" to operate the truck to the right of plaintiff's car. The second count differs from the first both in kind and in degree.

■ If plaintiff was a trespasser, as claimed by the defendants, then mere proof of simple negligence as alleged in count one would not entitle her to recover. *Akerson v. D. C. Bates & Sons, Inc.*, 180 Or 224, 174 P2d 953; *Napier v. First Congregational Church*, 157 Or 110, 70 P2d 43; *Carr v. Oregon-Washington R.R. & Nav. Co.*, 123 Or 259, 261 P 899; *Lange v. St. Johns Lumber Co.*, 115 Or 337, 237 P 696; *Kesterson v. California-Oregon Power Co.*, 114 Or 22, 228 P 1092; 2 Restatement, Torts, § 333; 38 Am Jur, Negligence, § 109, pp 773-4.

■■ Again, if plaintiff proved only simple negligence on the part of the defendants she could not recover if defendant proved that she was herself guilty of negligence contributing to the accident. This would be true regardless of her status as invitee, licensee or trespasser. No citation of authority is necessary. On the other hand, if the plaintiff established her claim of wanton misconduct on the part of the defendants, as alleged in count two of the complaint, the defense of contributory negligence would not be available to the defendants. From Prosser on Torts, 2d ed, § 51, we quote:

> "Where the defendant's conduct is actually intended to inflict harm upon the plaintiff, contributory negligence is not recognized as a defense. Thus it is no defense to an assault and battery. The same is true of that aggravated form of negligence, ap-

proaching intent, which has been characterized variously as 'wilful,' 'wanton,' or 'reckless,' as to which nearly all courts have held that ordinary negligence on the part of the plaintiff will not bar recovery. Such conduct differs from negligence not only in degree but in kind, and in the social condemnation attached to it. Many courts have said that in such cases the defendant's conduct is not the 'proximate cause' of the harm; but this is clearly unsound, for the casual connection is the same as in any ordinary contributory negligence case. It is in reality a rule of comparative fault which is being applied, and the court is refusing to set up the lesser fault against the greater. Thus if the defendant's negligence is merely 'gross,' an extreme departure from ordinary standards, but still without elements of 'wilfulness' or 'wantonness,' it is generally held that the plaintiff's ordinary negligence is a defense. * * *'' And see, 38 Am Jur, Negligence, § 178; 2 Restatement of Torts 1260-62, §§ 481, 482; *Adkisson v. City of Seattle,* 42 Wash2d 676, 258 P2d 461.

It is clear that even if the plaintiff was a trespasser or bare licensee and therefore could not recover for simple negligence of the defendants, yet she could recover on proof of wanton misconduct of the defendants, as alleged in count two. *Akerson v. D. C. Bates & Sons, Inc.; Napier v. First Congregational Church; Lange v. St. Johns Lumber Co.; Kesterson v. California-Oregon Power Co.;* 2 Restatement of Torts, § 333, all supra. And see, *Adkisson v. City of Seattle,* supra, 42 Wash2d 676, 258 P2d 461.

■ We shall at a later point consider whether the defendants were entitled to an order requiring the plaintiff to elect between the two counts in the complaint. Assuming under the rules of pleading and procedure that plaintiff was entitled to go to trial on both counts of the complaint, we find that there was substantial

conflicting evidence which authorized the submission to the jury of the following questions: (1) Was the defendant guilty of simple negligence? If so, was the plaintiff guilty of contributory negligence or was she a trespasser? (2) Was the defendant guilty of driving recklessly and wantonly and in utter disregard of the safety of the plaintiff, having knowledge of her presence? On the question of contributory negligence there was a direct conflict of testimony as to the manner in which the collision occurred and as to the location at which it occurred on the road. On the charge that the plaintiff was a trespasser the defendants contend that the plaintiff's admission in the second count of her complaint that she was on a private road conclusively establishes that she was a trespasser. We consider this a non sequitur. The defendants by an affirmative plea raised the defense that plaintiff was a trespasser, and plaintiff filed a denial. It is true that there was a no trespassing sign adjacent to the road, but there was also another sign giving to the defendants' trucks the right-of-way, which would imply that others were permitted on the road. The evidence indicates that employees used the road in going to and from their place of employment. We quote from the cross examination of defendants' witness Kennedy:

"Q. Now, on October 3, 1953, what was the regulation of the company with respect to the trespassing on the private roads?

"A. The regulations of course were that there should be none.

"Q. Trespassing was forbidden?

"A. That is right.

"Q. What was the regulations of the company with respect to right of way for trucks?

"A. Our logging trucks have the right of way

over all other company equipment. They have the actual right of way.

"Q. So they would have the right of way under the regulations of the company with respect to any other vehicles on the road whatever?

"A. That is correct."

On cross examination Mr. Kennedy testified:

"Q. That on October 3, for several months prior, isn't it a fact that employees of the Kinzua Pine Mills, particularly the fallers in the woods, drove their own private vehicles to work on numerous occasions?

"A. I think that is true.

"Q. And that has always been the policy ever since you worked for Kinzua in 1947, isn't that right?

"A. I think so, yes.

\* \* \* \* \*

"Q. On the bulletin board at Camp 5, wasn't there a notice posted that the company would furnish transportation to the woods or they could take their own private vehicles?

"THE COURT: As of what time are you speaking Mr. Mahoney.

"MR. MAHONEY: October 3, 1953 and prior to this.

"A. There is a notice to that effect; I don't know just what the wording is.

"Q. There is a notice that reads substantially that?

"A. That is right."

■ It was for the jury to say whether plaintiff was a trespasser in accompanying her husband to his place of employment and then driving back in the car. If the plaintiff established her right of recovery against the

defendant driver of the truck under the allegations of the first count of the complaint, she would be entitled to a judgment against both defendants, the employer and the employee, for the employer would be liable for the simple negligence of his employee in the course and scope of the employment. If, on the other hand, she established a right of recovery against the defendant driver of the truck by a proof of wanton misconduct on his part, a further question would arise as to the liability of the employer under the rules of respondeat superior.

■ With these considerations in mind we approach the defendants' first assignment of error, which is as follows:

> "The court erred at commencement of trial in refusing to allow appellants' motion to require respondent to elect whether to proceed to trial on her first count of ordinary negligence or on her second count of wanton misconduct."

The motion to elect was made at the commencement of the trial and at a time when plaintiff could not know just what the proof might be concerning the mental state of mind of the defendant, whether negligent or wanton. Such a motion, especially when made at the commencement of the trial, is addressed to the sound discretion of the trial court. The ruling will not be disturbed unless an abuse of discretion appears. *Patterson et al. v. Babcock & Peets,* 128 Or 476, 274 P 903 (election between contract and tort); *Kaller v. Spady,* 144 Or 206, 10 P2d 1119, 24 P2d 351.

As we have said, the first count charges simple negligence. Before determining whether the court should have required an election we will consider the legal character of the second count. Did it allege as-

sault and battery or a tort of lesser degree? An assault and battery has been repeatedly defined, but in divergent terms, and "the courts are often perplexed in an attempt to discriminate between what is and what is not an assault." 4 Am Jur, Assault and Battery, § 2, p 124.

■ In *Stark v. Epler,* 59 Or 262, 117 P 276, we said an assault is an intentional attempt by force to do violence to the person of another, and a "battery is the actual application to such person of the attempted force and violence."

In *Hough v. Iderhoff,* 69 Or 568, 139 P 931, we said any violation of the person is an assault. "Putting his hands upon her with a view to violate her person is a battery."

An unauthorized surgical operation constitutes an assault and battery. *Hively v. Higgs,* 120 Or 588, 253 P 363.

A conditional vendor may have a right to retake the chattel on account of default by the vendee, but if the vendee places his body in a position which obstructs the vendor so that in order to take the chattel he must necessarily apply *force however slight* to the person, he must desist or be liable for assault and battery. *Westerman v. Oregon Credit Corp.,* 168 Or 216, 122 P2d 435.

Again, in *Lamb v. Woodry,* 154 Or 30, 58 P2d 1257, it is held that if a defendant in seeking to recapture a chattel, to the possession of which he is entitled, meets with obstruction by the vendee, he is guilty of assault and battery if in so doing he *touches* the resisting person.

■ An assault has also been defined as an attempt with force or violence to do a corporal injury to another whether from malice or wantonness. *State v. Selby,*

73 Or 378, 144 P 657. Again, an assault is an intentional attempt to do violence to the person of another coupled with present ability to carry the intention into effect. *State v. Olsen,* 138 Or 666, 7 P2d 792.

■ We have said that the requisite intent in a charge of assault and battery is to do violence and personal injury to the person assaulted. *State v. Enloe,* 147 Or 123, 31 P2d 772.

A battery is defined in the Restatement as follows:

"An act which, directly or indirectly, is the legal cause of a harmful contact with another's person makes the actor liable to the other, if

"(a) the act is done with the intention of bringing about a harmful or offensive contact or an apprehension thereof to the other or a third person, and

"(b) the contact is not consented to by the other or the other's consent thereto is procured by fraud or duress, and

"(c) the contact is not otherwise privileged." Restatement of Torts, § 13, p 29.

■ From a consideration of the authorities we conclude that an intentional act causing unpermitted physical contact with the person of another does not necessarily amount to an assault and battery. We must distinguish between an intent to do an act which may be wilful or wanton and which may result in contact, on the one hand, and an act involving an intent to cause harmful or offensive contact with the person, on the other. An assault and battery involves more than an intentional act. There must be the intent to injure. However, the authorities plainly indicate that the word "injure" refers to legal injury, a violation of a protected right of the one assaulted. It does not necessarily mean bodily and physical injury. An offensive unpermitted

touch may be a battery though no physical damage results. Applying these considerations to the allegations of count two, we infer that defendant did intend to act and to act recklessly and in a wanton manner, but it is not alleged that he intended to strike the plaintiff or her car. The allegation approximates but does not amount to a charge of assault and battery by reason of the absence of the requisite intent to cause hostile contact with her person. In making this statement we do not intend to intimate that there is any distinction between intentionally striking plaintiff with defendant's fist or by intentionally striking the car in which she sat, with his car. If the intent to cause hostile unpermitted contact was alleged, his act would be a battery in either case. The courts have repeatedly fallen into error by referring to intentional or wilful acts without distinguishing between an intent to be reckless and an intent to hit the plaintiff.

*Smith v. Williams*, 180 Or 626, 178 P2d 710, closely resembles the case at bar. Plaintiff filed a complaint in which he set forth what he termed two causes of action arising out of an automobile collision. By the so-called first cause of action plaintiff charged gross negligence under the Guest Statute. By his second "cause" he pleaded ordinary negligence of the defendant, coupled with further facts by which he sought to recover, not as a guest, but as a paid passenger. On motion of the defendant the court required plaintiff to elect and plaintiff chose to proceed on the charge of simple negligence. At the close of plaintiff's case the court granted a nonsuit, and plaintiff appealed. This court held that plaintiff was a guest. From this it is apparent that the trial court properly granted the nonsuit on the charge upon which plaintiff went to trial, i.e., that of simple negligence. The court held that

there was evidence from which the jury could have found that defendant was guilty of gross negligence, had that issue been submitted to them. Thus the question on which the decision turned was whether the court should have required an election. It was held by a unanimous court that error was committed in requiring the election. This court first pointed out that the complaint did not contain two "causes of action." We quote:

> "* * * As a matter of fact, the effect of appellant's pleading was to plead one cause of action in two different manners, or by two counts as it might be termed. It is the same cause of action stated in different forms."

The court supported this conclusion with an impressive line of authorities, to which the reader is referred. See 180 Or 626, 629, 635.

While the question in *Smith v. Williams* related to counts charging (1) negligence, and (2) gross negligence, some of the authorities cited were based on facts which closely resembled those in the case at bar. The court quoted with approval from *Waechter v. St. Louis & M.R.R. Co.*, 113 Mo 270, 88 SW 147. In that case a pedestrian sued the defendant transportation company for running into him with a streetcar. The complaint was in two counts. The first charged simple negligence and the second charged that the motorman "intentionally, recklessly and with wanton disregard of the plaintiff's rights" ran the car upon him. The answer was a general denial and an affirmative plea of contributory negligence. The verdict was for plaintiff on the first count and for defendant on the second. At the close of plaintiff's evidence and at the close of all evidence the defendant moved the court for an order requiring an election between counts. The motions were

denied. The court treated the second count as one for "intentional injury." The court held that "The contention that the counts are a unit, stating two repugnant causes of action, we do not think is supported by either reason or authority."

"We do not think the court erred in refusing to compel the plaintiff to elect upon which count he would proceed. As before stated, there was but one cause of action, though stated in different ways. The evidence, it seems to us, would have justified a verdict on either count. It shows that the motorman, in charge of defendant's car was either extremely negligent, or, worse, was reckless of human life. Where there is evidence supporting two theories, upon either of which the plaintiff might recover, and both are properly pleaded, the plaintiff is entitled to have both theories submitted to the jury, and it would be a denial of his legal rights to withdraw either from the jury's consideration." *Waechter v. St. Louis & M.R.R. Co.*, 113 Mo 270, 88 SW 147, 149.

The judgment was affirmed.

In *Horstman v. Krumgold*, 55 Cal App2d 296, 130 P2d 720, the facts were almost identical to those in *Smith v. Williams*. The California court said:

"The court erred in compelling plaintiff to make an election between the two causes of action. Both were based upon the same set of facts and plaintiff had the right to state the facts in different, and if need be, inconsistent counts. Goldwater v. Oltman, 210 Cal. 408, 423, 292 P. 624, 71 A.L.R. 871. A litigant who has stated the facts in different counts so as to meet any possible developments in the evidence may not be required to elect between the various causes of action presented either before the trial or at the close of the case. 21 Cal. Jur. 232, § 161; Tanforan v. Tanforan, 173 Cal. 270, 273, 159 P. 709. If she was uncertain as to whether the evi-

dence would show the defendant was guilty of simple negligence or of willful misconduct she could so frame her complaint as to avail herself of either contingency, by setting forth in one count various allegations as to simple negligence and in another count the allegations as to willful misconduct. Plaintiff was entitled to have both theories submitted to the jury." 45 C.J. 1090, § 663.

See also, *Harvey v. Southern Pacific Co.,* 46 Or 505, 510, 80 P 1061; *Paget v. Cordes,* 129 Or 224, 277 P 101.

 Supporting our conclusion that the trial court properly refused to allow the appellant's motion to require an election, we cite the following cases from other jurisdictions: *Cohen v. Bucey,* 158 Ohio St 159, 107 NE2d 333; *Wargo v. Baske,* 273 Ill App 28. In both cases count one of the complaint alleged negligence and count two alleged wilful and wanton misconduct. *Consentino v. Heffelfinger,* 360 Mo 535, 229 SW2d 546, held allegation of negligence and of wilful, wanton and reckless conduct not necessarily repugnant. *Birmingham Railway L. & P. Co. v. Ryan,* 148 Ala 69, 41 S 616, count one charging negligence, count two charging wanton, wilful or intentional conduct; contributory negligence plea held good against count one, and not good against count two. Judgment for plaintiff affirmed. *Wells v. Wildin,* 224 Iowa 913, 277 NW 308, count one charging negligence and that the plaintiff *was not* a guest; count two charging recklessness and that plaintiff *was* a guest. See discussion 277 NW 311. *Paschal v. Hardwick,* 68 Ga Ct of App 571, 23 SE2d 465, holding that slight negligence and wanton conduct may be pleaded in different counts of complaint. See also, *Michaels v. Boruta,* Tex Civ App, 122 SW2d 216, 221; *Birmingham Railway L. & P. Co. v. Norton,* 7 Ala App 571, 61 So 459; *Bezemek v. Panico,*

301 Ill App 408, 23 NE 2d 216; *Grice v. O'Neill,* 315 Ill App 673, 43 NE2d 565; *Astin v. Chicago M. & St. P. R. Co.,* 143 Wis 477, 128 NW 265. The rule is well stated in 45 CJ 1090, Negligence, § 663, and in 65 CJS 902, Negligence, § 187(2). We quote from the latter text:

> "If plaintiff is uncertain as to whether the evidence will show that the injuries complained of were caused by simple negligence or by willful misconduct, he may so frame his complaint as to avail himself of either contingency, by setting forth the acts alleged to have caused the injuries in one count as constituting simple negligence, and in another count as constituting willful misconduct, and a complaint charging simple negligence only may be amended by adding a count charging willfulness or wantonness, where it relates to the same occurrences. If such counts allege one cause of action, and the evidence is sufficient to justify a verdict on either count, plaintiff cannot be compelled to elect on which he will proceed, but is entitled to have both theories submitted to the jury."

Defendants cite the following cases in support of their first assignment of error: *Denton v. Arnstein,* 197 Or 28, 250 P2d 407; *Estrada v. Orwitz,* 75 Cal App2d 54, 170 P2d 43; *Green v. Eden,* 24 Ind App 583, 56 NE 240; *Endorf v. Johnson,* 59 SD 549, 241 NW 519; *Kasanovich v. George,* 348 Pa 199, 34 A2d 523; Restatement of Torts, § 500, comment g.

*Estrada v. Orwitz,* supra, appears to be directly contrary to defendants' contention. The complaint charged that the defendant dentist, without authority, extracted five of the plaintiff's teeth, and the complaint also characterized the act as negligent. The court held that the complaint charged an assault and

battery and that negligence had nothing to do with such an action, but the court went on to say:

"* * * it is equally clear that a plaintiff may join a cause of action for an assault, based upon the theory of an unauthorized operation, with a cause of action based upon the theory that the same operation was negligently performed. Figlietti v. Frick, 203 Cal. 246, 263 P. 534. In such event evidence is, of course, admissible on that issue and the court may properly instruct upon it."

The court further said:

"* * * What plaintiff has done is to join two causes of action, one for assault, and one for negligence, without separately stating them. Defendant did not object by special demurrer or otherwise. Thus the fact that the two causes of action were joined in the same count is immaterial. §§ 430, 434, Code of Civil Procedure. * * *"

The case constitutes a clear holding that negligence and assault and battery may properly be set forth in separate counts under appropriate circumstances.

In *Green v. Eden,* supra, 24 Ind App 583, 56 NE 240, also cited by defendants, the plaintiff sued for damages caused by the driving of an ambulance "wrongfully, carelessly, and negligently". It was contended by the defendant that the word wrongfully meant wantonly and intentionally. The court rejected the contention. It then said:

"* * * If this construction can be given to the word 'wrongfully' in the connection in which it was used, then appellants' position is well grounded, for a single paragraph of complaint can not count on a careless and negligent act and wanton and wilful act. They constitute different and distinct causes of action, are inconsistent with each other, and hence can not be joined in the same paragraph. * * *"

By implication the court indicated that the two causes of action could properly be pleaded in separate counts. The case does not support the defendants' contention.

*Kasanovich v. George,* supra, 348 Pa 199, 34 A2d 523, also cited by defendants, is of importance but can give no comfort to the defendants. In an opinion by Justice Stern the court held that plaintiff's intestate was guilty of negligence in walking along the streetcar track with his back to approaching cars. The court held that plaintiff was entitled to recover notwithstanding the negligence of the deceased if defendant motorman intentionally inflicted the injury or if he was guilty of wanton misconduct. The court said:

> "* * * the learned trial judge should have instructed the jury that, even if the motorman was grossly negligent, plaintiff, because of decedent's contributory negligence, cannot recover, but that such contributory negligence would not be a bar if the motorman was guilty of wanton misconduct, that is, if he exhibited a reckless disregard for decedent's safety after observing his perilous position and realizing the danger involved in proceeding at a high rate of speed and without giving warning of his approach."

With this opinion we are in agreement. See, 38 Am Jur 854, Negligence, § 178; 2 Restatement of Torts 126, § 482(1). In the Kasanovich case there was no question presented concerning the right to plead assault and battery or wanton misconduct in one count and negligence in another. The case is also of value for its description of wanton misconduct:

> "* * * wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury,

a conscious indifference to the perpetration of the wrong. \* \* \*"

See also, 2 Restatement of Torts 1293, § 500.

The next case cited by defendants is *Endorf v. Johnson,* supra, 59 SD 549, 241 NW 519. There the court distinguished between gross negligence and wanton misconduct. The case has no bearing on the right to plead wanton misconduct and negligence in separate counts.

The only other case cited in support of the first assignment of error is *Denton v. Arnstein,* supra, 197 Or 28, 250 P2d 407, recently decided by this court. In that case the plaintiff stated her case in two separate counts. The first count alleged that the defendant wilfully, maliciously, and deliberately drove his car into the car in which plaintiff was riding. Plaintiff asked for punitive damages. The second count charged that the same acts were the result of carelessness, recklessness and negligence. On this count plaintiff asked only compensatory damages and she was met by a plea of contributory negligence. At the close of plaintiff's case defendant renewed an earlier motion to require plaintiff to elect and the motion was allowed. Plaintiff elected to stand on the first count. There was a verdict and judgment for plaintiff for compensatory and punitive damages. Defendant appealed. Judgment was affirmed. There are several distinctions between *Denton v. Arnstein,* on the one hand, and the pending case, on the other. In *Denton v. Arnstein* the court exercised its discretion and required an election. In the pending case the trial court in its discretion refused to require an election. Again, in *Denton v. Arnstein* the plaintiff prevailed on the count charging wantonness. In the pending case there was a verdict for

compensatory damages only, there being no prayer for punitive damages, so we cannot tell whether under the court's instructions the verdict for plaintiff was rendered upon count one or on count two. In *Denton v. Arnstein* the verdict for plaintiff shows that the order requiring an election could not have prejudiced the plaintiff, for plaintiff prevailed on the count most favorable to her and on which she elected to stand.

In the pending case we know only that if the court had required an election it might have prejudiced the plaintiff. In *Denton v. Arnstein* it was held that the first count charged assault and battery, which raises an exceedingly close question. We have pointed out that assault and battery as defined in the Oregon decisions involves an intent to cause unpermitted contact with the person of another, and it follows that one seeking to charge assault and battery should normally allege such intent. In *Denton v. Arnstein* the complaint did not allege an intent to cause contact, but in alleging that defendant acted wilfully, maliciously and deliberately it was perhaps sufficient as a charge of assault and battery. "Wilfully" is synonymous with "knowingly". *Siuslaw Timber Co. v. Russell*, 91 Or 6, 178 P 214, and the word "malicious" means:

> " * * * 'harboring malice, ill will, or enmity; having a deliberate intention to injure others; intending or determined on evil'. Funk & Wagnall's New Standard Dictionary. * * *'' Cited by Lusk, J. in *Cowgill, Adm'r v. Boock, Adm'r,* 189 Or 282, 310, 218 P2d 445.

The record fails to show that the defendant challenged the sufficiency of the complaint as constituting a charge of assault and battery, and after verdict we think this court was justified in treating the allegations as charging intent to injure. *McHargue v. Cal-*

*china,* 78 Or 326, 153 P 99. In any event there was convincing evidence that the defendant Arnstein did commit an assault and battery as the jury found and as this court held.

The courts are constantly confused and frustrated by the over-generous employment of adjectives in describing wrongful conduct, and the difficulty becomes well-nigh insurmountable when the attempt must be made to draw the line which marks the boundaries of different kinds of liability.

In contrast to the complaint in *Denton v. Arnstein* we find in the case at bar no allegation of malice or of wilfulness, though wantonness is alleged. We construe the complaint as did the defendants (the appellants here) who said of the second count:

"It is noted that the second count did not allege a wilful and intentional act but rather a wanton and reckless act committed with knowledge of respondent's presence and with utter disregard for her safety. By this count appellants were not charged with deliberately assaulting respondent with a truck but rather with seeing her and wantonly driving into her in disregard of her safety."

We feel compelled by the authorities cited and by many others considered but not cited to hold that there are four types of conduct into which the infinite variety of fact situations must fall: (1) Simple negligence, subject to the defense of contributory negligence, (2) gross negligence which we have repeatedly held may be subject to the defense of contributory negligence, (3) injury to the person of another committed in a "wanton" manner, meaning the doing of an intentional act of an unreasonable character in disregard of a risk known to the actor, or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow, usually accompanied

by a conscious indifference to consequences. Prosser on Torts, 2d ed, § 33, p 150. In the third category contributory negligence is no defense and for conduct of that kind a trespasser may recover. (4) Assault and battery where there is an actual intent not only to do an act but to cause personal injury.

It follows from the foregoing that *Denton v. Arnstein* reached a proper result but by reason of the distinctions between it and the pending case we are not bound to hold that the trial court erred in refusing to require an election in this case. The unfortunate fact is that neither party in *Denton v. Arnstein* cited *Smith v. Williams* in their briefs and that it was also wholly overlooked by us. Though *Smith v. Williams* involved separate counts charging simple negligence and gross negligence, the authorities cited in that case persuasively indicated that a plaintiff might separately plead simple negligence with wanton misconduct or assault and battery and have both counts submitted to the jury if the facts presented a jury question as to which charge had been proven. In *Denton v. Arnstein* we cited no case in support of our statement that because of the ''inconsistency'' an election must be required.

We now hold that the motion to require an election was properly denied in the pending case and leave it to the future to determine whether election must be required when a count for simple negligence is separately stated followed by a count for assault and battery. The evidence in this case was such that plaintiff could not reasonably be required to decide in advance whether the defendant was guilty of wanton misconduct. The decision of that question depended upon a finding as to the state of mind of the defendant driver, which was properly submitted to the jury.

60

Comparison of *Denton v. Arnstein* with *Smith v. Williams* raises other questions. We adhere to the holding in the Arnstein case that an assault and battery is not negligence and that in one sense a count for assault and battery is "inconsistent" with a count for negligence, for the reasons indicated. But it does not follow that it was necessary in order to avoid reversible error to require an election between counts. The joinder in a single count of one for battery and another for negligence is of course improper. But it does not follow that they may not be separately pleaded in certain cases. See ORS 16.090 and 16.220(b). If separate causes of action may be separately pleaded, then it would follow that different statements of a single cause of action may be separately pleaded. We think the better rule established by a wealth of authority is that when the character of plaintiff's right depends upon the proof of matters peculiarly within the knowledge of the defendant, and especially when they relate to the mental condition of the defendant at the time of his wrongful act, the plaintiff may plead both simple negligence, and in a separate count wanton misconduct, as was done in the pending case. It is difficult to see why a plaintiff may not also under the same conditions plead negligence and intentional injury.

The second assignment of error complains of the denial by the court of defendants' motion to take from the jury the first count of the complaint, the one charging simple negligence. What we have already said indicates that the court did not err in so ruling. Defendants pleaded contributory negligence and that the plaintiff was a trespasser, which defenses would be relevant only if simple negligence of defendants was in issue. Defendants' motion was based on the assumption that since plaintiff was on a private road she was neces-

sarily a trespasser. We have indicated that her status was for the jury to determine.

■ By the third assignment defendants assert that the court erred in denying the defendants' motion made at the close of plaintiff's case, which motion was as follows:

> "We move the Court to take from the jury consideration of the first count of the second amended complaint of plaintiff on the ground that there is no evidence to support the same."

It is supported by the unusual argument that the plaintiff's testimony showed "the intentional tort of assault and battery rather than wanton misconduct" and "does not stand the inference of ordinary negligence" as alleged in the first count. Defendants overlook the fact that the defendants in their case gave an entirely different account of the accident. Since at the close of the case a jury question was presented both as to negligence and wanton misconduct, we will not reverse the judgment on the dubious ground that the plaintiff's testimony taken alone showed wantonness rather than negligence.

The fourth assignment presents nothing new.

■ By the fifth and sixth assignments defendants assert that the court erred in denying a motion made at the close of plaintiff's case in chief and again at the close of defendants' case in chief for orders of nonsuit and directed verdict on the ground that "all of the evidence in this case shows only intent on behalf of Charles Geer (the defendant driver) to inflict injuries to the plaintiff. We think the motion for nonsuit was properly denied, but in any event, at the close of the defendants' case there was evidence from which the jury could have found for plaintiff on the first count, and for all we know, the verdict may have been based

on the conclusion of the jury that defendant was guilty of negligence and that plaintiff was neither a trespasser nor contributorily negligent. If we are right in holding that both counts were properly before the jury, then we must reject the fifth and sixth assignments. Furthermore we hold that it was for the jury to say whether defendant driver was guilty of wanton misconduct. They were not bound under the evidence to find that he intended to hit and injure the plaintiff. We reject the defendants' contention that if the defendant was guilty of wanton misconduct he was necessarily acting outside the scope of his employment as a matter of law. The defendants "Admit that the defendant Charles Geer was at the time referred to an employee of the defendant Kinzua Pine Mills Co. and in the course of his employment operated a logging truck for and on behalf of that defendant."

In *Powers v. Spokane, Portland & Seattle Ry. Co.*, 182 Or 468, 187 P2d 960, the action was brought against the defendant railway company for negligent operation of a train by the employee of the defendant company. The court affirmed a judgment of nonsuit. We quote:

"Under the facts as disclosed by the record in this case the decedents were trespassers upon the right of way of the defendant company and, inasmuch as the defendant was not guilty of reckless or wanton conduct, it was not liable to the plaintiffs for the death of the decedents."

Again, in *Monnet v. Ullman et al.*, 129 Or 44, 276 P 244, plaintiff sued the employer for negligent operation of a truck by an employee. Plaintiff was riding with the employee without permission of the employer. This court said:

"* * * In the absence of wilfulness or wantonness, or permission of the employer, express

or implied, the authorities are all against a recovery in a case of that character." Citing many cases.

The court then found that there was no evidence of wilfulness or wantonness and since plaintiff was in the position of a trespasser she could not recover from the employer.

In *Newkirk v. Oregon-Washington R.R. & Nav. Co.,* 128 Or 28, 273 P 707, this court quoted with approval the following text:

" 'The rule laid down by earlier decisions both in England and in many of the United States is that the master is not liable for damages resulting from the wilful, wanton, or malicious acts of his servant unless done by his express direction or with his assent, although the act was committed within the line of the servant's duties. But now in almost all jurisdictions it is well settled that the master is liable for the wilful or malicious acts of the servant done in the course of his employment and within its scope, although the acts were not expressly ratified by the master or authorized by him. Such acts are imputable to the master under the doctrine of *respondeat superior,* and in accordance with general principles heretofore discussed the master will be liable, although the acts were in disobedience of express orders or instructions given by him, or although the particular act complained of may have been in excess of the servant's authority, and regardless of the motive or intention of the servant. It has been held, however, that, if the nature of the act is such as to render it doubtful if the act comes within the scope of the servant's employment, the intention with which the act is done may be considered in determining its character.' 39 C.J. 1292, § 1487." Citing many cases.

See also, Restatement of Agency 516, § 231; 57 CJS

322, Master and Servant, § 573. From 57 CJS 336, Master and Servant, § 575, we quote:

"The master will be liable for injuries to third persons willfully and wantonly inflicted by a servant while using his horse, teams, or vehicles, and acting within the scope of his employment."

*Higbee Co. v. Jackson,* 101 Ohio St 75, 128 NE 61, directly supports our conclusion. And see, 39 CJ 1302, note 65, and cases cited.

Defendants rely upon *Barry v. Oregon Trunk Railway,* 197 Or 246, 253 P2d 260, as authority for the proposition that a master is not liable for an assault and battery by his servant. We are satisfied with that decision, but the facts there indicated that the assault was the result of a personal quarrel, and, as we said, "in striking the blow, Faherty was serving a purpose solely his own." The case is clearly distinguishable.

We find no merit in the seventh and eighth assignments of error.

By the ninth and tenth assignments it is asserted that the court erred in denying two motions for orders taking from the consideration of the jury and striking from the complaint allegations that a lumbosacral fusion operation would be necessary. Whether such an operation was necessary was peculiarly a matter for expert testimony. We find no evidence which goes even to the extent of indicating that such an operation would be necessary. The matter was left in the realm of speculation. In fact, the expert testified: "I don't feel that I have sufficient evidence at this time to come to such a conclusion." We quote:

"Q. Actually, isn't it true that, from what you have found thus far on your examinations and ob-

servations of Mrs. Cook, that certainly no operation is in store at the present time?

"A. Yes, I either stated directly, or implied that before. I don't see evidence for considering a surgical fusion of the spine at this time.

\* \* \* \* \*

"A. \* \* \* I have a strong conviction, myself, that with the passage of a little more time she will improve greatly; therefore I would hesitate to make a statement at this time that I would consider that spinal fusion would definitely be necessary. I don't feel that I have sufficient evidence at this time to come to such a conclusion. Hypothetically, if she shows at the end of that time, positive muscle spasm and inability to do any of her housework at all without the use of a brace, and it continues to be a very disabling condition, then I would say yes, she should have a spinal fusion.

\* \* \* \* \*

"Q. But could her condition remain so that she would have to keep on wearing this brace indefinitely?

"A. It could remain so that one or the other conditions would obtain, either wear the brace for an indefinite period or subject herself to such an operation as has been described, but I don't believe that that is what will obtain."

There was not substantial evidence tending to show the probable necessity for a spinal fusion.

The trial court instructed in general terms that the plaintiff must prove her damages by the "preponderance of the satisfactory evidence" but made no mention of the alleged necessity for a lumbosacral fusion operation. *Denton v. Arnstein,* supra.

The 11th and 12th assignments charge that the court erred in denying defendants' motion to take from the

jury the allegation that the injury to her nervous system was permanent. There was ample lay and expert testimony that plaintiff suffered serious injury, was rendered nervous and that the condition continued to date of the trial. However, the expert testified as follows:

"Q. You have not found any permanent disability, have you?

"A. Yes, up to the present date. I cannot predict into the future."

Here again the question is whether the failure to take from the jury the charge of permanent injury to the nervous system was error, and if so, reversible.

By the 13th and 14th assignments the defendants contend that the court committed prejudicial error in refusing to take from the jury the allegation of negligence in the complaint, which reads: "In failing to keep a proper outlook for vehicles and persons on or adjacent to said highway and particularly this plaintiff and the auto she was then and there operating."

Mrs. Cook testified that she saw the truck coming while it was 140 to 150 feet away; that Geer saw her, since she was looking him right in the eye and he applied his brakes before the impact. Geer testified that he first saw plaintiff's vehicle when it was about 15 to 20 feet away. Geer's passenger, Mallory, testified that he first saw plaintiff's vehicle when it was not over 20 feet away. Whether the defendant driver failed to keep a proper lookout was for the jury to decide. *Pazen v. Des Moines Transp. Co.*, 223 Iowa 23, 272 NW 126; *Via v. Badanes*, 189 Va 44, 52 SE2d 174.

The 15th assignment relates to the sustaining of objection to questions propounded by counsel for de-

fendant. Dr. McGowan as a witness for the defense had testified at some length concerning his examination of plaintiff's pelvic region. The accident occurred in October 1953 and the examination was made in March 1954. Concerning that examination the witness testified as follows:

"A. * * * The internal examination, the uterus was normal size, free and movable, the area of the tubal area was perfectly free and normal, the mouth of the uterus, the cervix, was what we call eroded or raw, which we frequently see. It bled a little bit upon examination, which is unusual, and about which we are frequently concerned. The cervix also showed evidence of chronic infection, there was a heavy discharge and it was enlarged, which we see as a result of infection over quite a period of time. There was also evidence of a previous laceration or tear on the mouth of the uterus and cervix, particularly on the left side, which extended clear through the mouth of the uterus—

"Mr. Sussman: If Your Honor please, I wish to ask that all of this testimony be stricken. We have made no claim in our case with reference to the matters about which this doctor is testifying, and the doctor is testifying—

"The Court: I think, perhaps, the testimony has gone beyond any claims made—

"Mr. Corey: I think he has about completed that phase of it. I appreciate the fact that you are not making any claim regarding—

"The Court: The motion will be allowed then."

Thereafter the testimony was as follows:

"Q. Doctor, I will rephrase my question. As a result of your examination, did you find any abnormal conditions of the pelvic region other than this one condition of the cervix, which you have described?

"A. Other than these chronically infected lacer-

ated cervix with this erosion, I found no evidence of pathology of the female reproduction organs.

"Mr. Corey: I think Mr. Sussman is going to object.

"Mr. Sussman: There is nothing in here about the pelvic region in the complaint.

"The Court: There is nothing in the complaint.

"Mr. Corey: That is the next question, I was going to ask, if I may.

"The Court: I think there was an objection to the last question and the answer will be stricken. You may ask the next question, and we will rule on that.

\* \* \* \* \*

"Mr. Corey: We will ask that the Doctor's previous answer be admitted, Your Honor.

"The Court: There is no allegation on the injuries, so it will not be material. Now, as I recall it, is there not any testimony with respect to that.

"Mr. Corey: Well, Your Honor, Paragraph V of the section of the second amended complaint I have before me has a lot of material in here, and among other things I see the allegation, 'and plaintiff still suffers pain and mental anguish,' and that seems to refer all the way back to the very beginning of the paragraph, it is very general, and I think that we should be entitled to rebut whatever is meant by the pleader in this pleading. I am referring to particularly to lines 23 and 24. If he made a negative finding, I think we had better show it, and would be entitled to show it.

"The Court: The motion will be denied so far as admitting the matter."

The defendants assert that the court erred "in sustaining objection to the question whether Dr. McGowan found any abnormal condition of the pelvic region."

The jury heard the testimony and though it appears to have been stricken, they were not instructed to disregard it. The apparent reasons for the ruling of the court were first, that there was no pleading of injury to the pelvic region, and second, that the plaintiff by her attorney stated that "We have made no claim in our case with reference to the matters about which this doctor is testifying * * *." The court committed no reversible error in concluding that the evidence was immaterial.

Our examination of the record has disclosed two minor errors: (1) The court failed to take from the jury the allegation of the complaint "that a lumbosacral fusion operation would be necessary." (2) The court failed to take from the jury the allegation that the injury to her nervous system was permanent. The court instructed the jury as follows:

> "* * * before you can award the plaintiff any sum of money for alleged permanent injuries you must be convinced by a preponderance of the satisfactory evidence that permanent injuries are probable. It is not sufficient that permanent injuries are merely possible."

Are we to assume that the jury increased the damages because of allegations in the complaint which were wholly unsupported by evidence, and that they did so in violation of the quoted instruction? We think not. The practical aspects of the case must be considered. It is not always possible for the trial judge at the time of giving instructions to recollect all of the evidence so as to be certain whether in the course of a long trial some evidence on an issue may or may not have been received. And he runs a serious risk in taking from the jury a specification of negligence in a case such as this.

■ We agree with the statement of this court in *Denton v. Arnstein,* supra, that "in any case where the evidence is insufficient to justify the submission of the issue of permanent injury to the jury, it is better practice for the court to take the question directly from the jury pursuant to a proper request therefor." We also agree with the conclusion of the court in that case that "in the light of the definite instructions that it did give upon the measure of damages, we cannot say that the court committed prejudicial error in refusing to give defendant's requested instruction."

■ In view of the evidence in this case, the instructions of the court and the damages assessed, we are of the opinion that the failure to take from the jury the two issues above mentioned does not require reversal.

The 16th assignment relates to an instruction requested but not given. The subject involved was the law regarding the liability of the defendant corporation for acts of its servant. The law was sufficiently covered in the instructions given.

We find no merit in the remaining assignments of error.

The judgment is affirmed.