Filed 8/22/22

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re J.R. et al., Persons Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br>     Plaintiff and Respondent, <br><br> v. <br> A.B., <br><br>     Defendant and Appellant. | A164334 <br><br> (Humboldt County Super. Ct. Nos. JV2000075, JV2000076 ) |

    A.B.'s (mother's) two young sons, J.R. who is now nearly four years old and B.R. who is now nearly three, were removed from her custody as a one-and-a-half-year-old toddler (J.R.) and a six-month-old infant (B.R.). She appeals orders entered about a year and a half later terminating her parental rights, arguing the juvenile court erred in its consideration of the beneficial relationship exception (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i)).[1] She contends the matter must be remanded for a new section 366.26 hearing

---

    [*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

    [1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

because the juvenile court relied on factors that are legally erroneous under *In re Caden C.* (2021) 11 Cal.5th 614, a decision clarifying the exception's scope that was decided about six months before the section 366.26 hearing took place in this case.

We affirm the orders terminating parental rights, but do not reach the merits of the legal question mother raises because the record does not contain evidence that would support application of the beneficial relationship exception. We publish portions of this decision to clarify that when a juvenile court applies the wrong legal standard in rejecting the beneficial relationship exception, reversal is not warranted if the parent did not introduce evidence that would permit a finding in their favor under the correct legal standard. When a parent has not done so, any reliance by the juvenile court on improper factors is harmless. In the unpublished portion of this opinion we explain why mother failed to do so here.

## BACKGROUND

The two young boys were removed from the custody of both of their parents, who are married, by the Humboldt County Department of Health and Human Services (agency) in May 2020, after a string of child abuse and neglect referrals stemming from repeated bouts of domestic violence between the couple, concerns over parental substance abuse and, in mother's case, mental health concerns. As noted, J.R. was then 19 months old and B.R. was 6 months old. They were placed into foster care together, later joined by a newborn sister who was detained in a separate case (not at issue here) after mother tested positive for drugs at her birth.

The juvenile court sustained allegations that the two young boys were at substantial risk of both serious physical and emotional harm due to their exposure to ongoing domestic violence in the home, father's

2

methamphetamine abuse and mother's self-reported depression that was contributing to her inability to protect them (§ 300, subds. (b), (c)). During the case, mother's struggles with substance abuse also became an issue. The parents received 12 months of reunification services, which were terminated on August 12, 2021. Later, after mother entered a residential drug treatment program, she filed a petition under section 388 asking the court to reinstate her reunification services. The matter was calendared for an evidentiary hearing at the same time as the section 366.26 hearing.

By the time the combined sections 366.26/388 evidentiary hearing took place in December 2021, J.R. had just turned three years old and B.R. two, and the little boys had been out of their parents' custody for nearly 19 months. The evidence at the hearing consisted of several reports and other pre-hearing filings,[2] and brief testimony by a social worker and mother. At the conclusion of the hearing, the court denied mother's section 388 petition and terminated parental rights over both children.

---

[2] Although it did not formally enter them into evidence, the juvenile court said that it had considered: the section 366.26 report, an Adoption Assessment Addendum to the section 366.26 report, a report prepared by the Court Appointed Special Advocate (CASA), a response to the section 388 petition, mother's pretrial statement, and an Addendum Report filed the previous day.

The court did not state that it considered any earlier reports, such as those prepared for status review hearings and for the detention, jurisdiction and disposition hearings. Accordingly, those earlier reports are not part of the evidentiary record of the section 366.26 hearing and we will not consider them. (See *In re L.A.-O.* (2021) 73 Cal.App.5th 197, 202, 207-208.)

In rendering these rulings, it made extensive oral comments from the bench that are the focus of mother's appellate arguments but, for the reasons below, are unnecessary to examine.

These timely appeals by mother followed.

## DISCUSSION

### I.

### *The Law*

As noted, about six months before the section 366.26 hearing took place, the Supreme Court decided *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*), which addressed the purpose and scope of the beneficial relationship exception (§ 366.26, subd. (c)(1)(B)(i)), a statutory doctrine that allows the juvenile court, in appropriate circumstances, to deviate from the presumptively preferred option of choosing adoption as a child's permanent plan after reunification has failed. In essence, the Court explained, when a child cannot safely be returned to a parent's custody, this exception preserves the child's right to maintain a relationship with the child's parent "if severing that relationship would, on balance, harm the child." (*Caden C.,* at p. 643.) Extended discussion of the doctrine's mechanics and elements is unnecessary. (See generally *In re J.D.* (2021) 70 Cal.App.5th 833 (*J.D.*) [discussing the exception as construed by *Caden C.*].) But one aspect bears mention: the burden of proving this exception is on the parent, by a preponderance of the evidence. (See *Caden C.*, at p. 636; *J.D.*, at pp. 854, 869.)

In her opening brief, mother raises a single issue. She maintains the juvenile court considered an improper factor in assessing the second element of this test, which requires a parent to show that "the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship."

4

(*Caden C., supra,* 11 Cal.5th at pp. 636, 640.) She asserts the case must be remanded because "rather than assessing whether Mother and her sons had a beneficial relationship as defined by *Caden C.,* the juvenile court appears to have considered whether there was a 'parental-bond' between Mother and her children." Thus, she maintains, the juvenile court applied the wrong legal standard in evaluating the second element.

It is unnecessary to decide whether any error occurred (nor whether, as urged by the agency, any such error was invited by mother herself during her closing arguments) because mother was not prejudiced by any such error.[3] As we will explain, unlike in cases where this court and others have remanded for errors of a nature claimed here to be similar, the record in this case would not support a finding in mother's favor on the parental benefit exception even if her evidence were credited. We will address mother's argument on that factual point in the unpublished portion of our opinion.

We do not reverse dependency cases for harmless error. As our Supreme Court has explained: "A child has a compelling right to a stable,

---

[3] There also are significant issues as to whether any such error was forfeited. As noted, the section 366.26 hearing took place six months after *Caden C.* was decided, and yet mother did not cite that case, address it or argue that the juvenile court should apply the legal standard it announced. The parties and the court all had the benefit of the Supreme Court's guidance by then. If, as mother asserts, the juvenile court was being expressly urged by the agency to apply the wrong legal standard, then it was incumbent upon mother to say so to avert the very problem she now says occurred. Had she done so, this appeal perhaps could have been avoided. (See generally *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 [applying " 'established' " rule that " 'issues not raised in the trial court cannot be raised for the first time on appeal' "].) We of course have discretion to decide pure issues of law for the first time on appeal, but express no opinion as to whether doing so in this instance would be appropriate.

5

permanent placement that allows a caretaker to make a full emotional commitment to the child.  [Citation.]  Courts should strive to give the child this stable, permanent placement, and this full emotional commitment, as promptly as reasonably possible consistent with protecting the parties' rights and making a reasoned decision.  The delay an appellate reversal causes might be contrary to, rather than in, the child's best interests.  Thus, a reviewing court should not mechanically set aside an adoption order because of error . . . ; the error must be prejudicial under the proper standard before reversal is appropriate." (*In re Celine R.* (2003) 31 Cal.4th 45, 59 [addressing error in failing to appoint separate counsel for children]; see also, e.g., *In re Shannon M.* (2013) 221 Cal.App.4th 282, 302 [engaging in harmless error analysis where juvenile court applied wrong legal standard]; Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

When a trial court applies the wrong legal standard, a remand for further proceedings is certainly appropriate if an appellate court announces a new legal standard and it is unclear from the record whether the trial court would have reached the same result had it not lacked appellate guidance. (See *In re Charlisse C.* (2008) 45 Cal.4th 145, 166-167; see also *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 824; *Ramirez v. Yosemite Water Co., Inc.* (1999) 20 Cal.4th 785, 803; accord, *Young v. Superior Court of Solano County* (2022) 79 Cal.App.5th 138, 169; *Guerrero v. Hestrin* (2020) 56 Cal.App.5th 172, 190.)  After all, in such a situation the record might not be fully developed (*Charlisse C.*, at p. 167) and obvious considerations of fairness are implicated as well (see *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 931 [remand appropriate " 'where justice demands that course' "]).  Plus, "appellate courts should be wary of finding harmless error '[w]hen a counterfactual inquiry appears too difficult to

responsibly undertake, or a counterfactual conclusion relies on inferences that really amount to guesswork.'" (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1082.) Thus, consistent with this general framework, this court in *J.D.*, *supra*, 70 Cal.App.5th 833 and other courts along with us have reversed juvenile court rulings that were entered before *Caden C.* was decided for legal error that *Caden C.* made apparent, when the evidence adduced at the section 366.26 hearing could have supported application of the beneficial relationship exception had the juvenile court had the benefit of that decision when it ruled.[4] The requirement of prejudice was implicit in our decision in *J.D.*, but we now say so expressly.

But when, as in this case, the proper legal standard is already established and a party has had a full and fair opportunity to present all of their evidence on a contested issue, and yet in the end there is simply no evidence that could support a favorable finding for them, then any legal error

---

[4] See *In re D.P.* (2022) 76 Cal.App.5th 153, 167 (reversing and remanding for error under *Caden C.* where there was "some evidentiary support" for applying the exception); *J.D., supra,* 70 Cal.App.5th at pp. 841, 855, 862 (reversing and remanding for error under *Caden C.*, where mother "presented evidence to support a finding that [child] has a 'substantial, positive, emotional attachment' to her sufficient to meet the second element" and the evidence almost "compel[led] a determination that mother proved the existence of a beneficial relationship as a matter of law"); *In re D.M.* (2021) 71 Cal.App.5th 261, 271 (given father's testimony about his relationship with children, error in considering improper factors not harmless because "[w]e cannot know how the court would have exercised its discretion" under *Caden C.*); *In re B.D.* (2021) 66 Cal.App.5th 1218, 1222, 1229, 1230-1231 (reversing and remanding where "our review of the record suggests that the parents presented evidence to support a finding that they had a beneficial relationship with their children, should the juvenile court credit that evidence"); see also *In re Katherine J.* (2022) 75 Cal.App.5th 303, 321 ("parent's testimony [in *In re B.D.*] . . . , if credited, indicated a strong attachment").

in the court's reasoning or basis for its decision quite obviously is harmless.[5] (See, e.g., *Tanforan v. Tanforan* (1916) 173 Cal. 270, 274 [error in forcing plaintiff to abandon duress claim at trial held harmless because claim was "wholly unsupported by the evidence"]; accord, *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 107 [error that precludes consideration of a proper legal theory is "not categorically reversible"]; see also *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1452-1453 [affirming juvenile court ruling despite application of wrong legal standard, because ruling was supported by undisputed evidence under the proper standard]; *In re Alayah J.* (2017) 9 Cal.App.5th 469, 482 [harmless error to defer consideration of parent's section 388 petition until after section 366.26 hearing because "the evidence showed, at best, changing rather than changed circumstances"].)  Simply put, a remand for factual finding is not appropriate when there are no factual issues to resolve due to a failure of proof by the party who has the burden of proof.  (See, e.g., *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 414 [despite trial court error, case must be remanded for trial court to decide if arbitration agreements were void only "[t]o the extent . . . any plaintiff did produce legally sufficient

_____

[5] We respectfully disagree with two recent authorities to the extent they may be construed as mandating reversal of a post-*Caden C.* order terminating parental rights for legal error in the application of *Caden C.* without considering if the record would have supported a favorable finding had the proper legal standard been applied.  (See *In re M.G.* (2022) 80 Cal.App.5th 836 [reversing order terminating parental rights entered one week after *Caden C.* was published]; *In re L.A.-O., supra,* 73 Cal.App.5th at pp. 208, 211-212 [doing same on similar timing, despite also concluding there was "no evidence of a beneficial relationship at all" between children and father and "[a]s to both parents, there was evidence that the visits actually upset the children"].)

evidence of fraud"]; see also *id.* at pp. 402, 426-427, 431 [plaintiffs who did not present legally sufficient evidence concerning fraud claim not entitled to remand]; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973 [remand required to resolve factually disputed issues concerning fraud in the inducement, "unless there is no evidentiary support for the [fraud] claims"].)

Here, despite her assertions to the contrary, mother presented no evidence that either of her young sons had a "substantial, positive emotional attachment" to her within the meaning of *Caden C.*, and so there are no factual issues to resolve. In the remainder of this opinion, which we do not publish, we explain why that is so. So a remand due to any legal error in the juvenile court's consideration of the beneficial relationship is not warranted, and it also would be pointless.

## II.

### *The Evidence*

We agree with the agency that mother, who bore the burden of proving this exception (see *J.D.*, *supra*, 70 Cal.App.5th at pp. 854, 869), did not introduce any evidence that either child had a substantial emotional attachment to her. Mother's opening brief does not even assert that she introduced evidence sufficient to prove this element. She says so only in her reply brief where, responding to the agency's argument, she says that visitation logs provided to the court in an addendum report, along with her own testimony and that of the social worker, was "evidence that could have supported a finding that [she] had a beneficial relationship with J.R. and B.R." We do not agree that this evidence suffices.

"A positive attachment between parent and child is necessarily one that is not detrimental to the child but *is nurturing and provides the child*

9

*with a sense of security and stability,*" and "an emotional attachment is one where the child views the parent as *more than a mere friend or playmate* and [whose] interactions with the parent were not ambivalent, detached, or indifferent." (*B.D.*, *supra*, 66 Cal.App.5th at p. 1230, italics added.) Here, as we will explain, the evidence reflected that mother was appropriate with the children, attended to their toddler needs during visits in various ways, and played with them. But there was no evidence that either child had any kind of emotional attachment to mother, much less a "substantial" emotional attachment to her.

The visitation logs that were attached to one of the reports, which covered the last two months of supervised visits (ten visits in all, from September 30 to November 30, 2021), do not indicate the kind of "substantial, positive, emotional attachment" that *Caden C.* described. (See *J.D.*, *supra*, 70 Cal.App.5th at pp. 854-855). Those 21 pages of visitation records, which we have independently reviewed, reflect that in about half of the visits the children would "sometimes" eagerly interact with mother and in one visit were noted as having been consistently responsive to her direction. But apart from a single time when the little boys were noted to have held hands with mother (once, as she was walking them into the visitation room), there is no record of either child ever hugging or kissing mother, displaying affection in other ways or even laughing during those visits. On the contrary, the logs indicate that they *didn't* do any of those things. The logs contain boxes with descriptive behaviors for the visitation monitor to check off as appropriate (as a supplement to the narrative descriptions), and at every single visit the visitation monitor left blank the boxes indicating that the children "showed affection during visit" or "laughed." There also was no evidence of crying when visits ended (the "cried" box was left unchecked at every visit too).

10

There is no evidence either child ever asked to go home with mother. The box indicating whether the parents were "comforting and supporting" was left unchecked in all but two of the ten visits. Indeed, there is a record of mother hugging her children only once, during one visit when the log notes that she "hugged [J.R.]."

Mother asserts, accurately, the visitation logs reflect she "gave positive attention to the children" and the children "were consistently responsive and involved with her," "appeared comfortable" and "eagerly interacted" with her. But mother cites no authority that such evidence would be sufficient to sustain a finding that either child had a substantial, positive emotional attachment to her, and we are aware of none. She does not explain how the relationship depicted in the logs rises to the level of "more than a mere friend or playmate." (*B.D.*, *supra*, 66 Cal.App.5th at p. 1230.) The nature of these visits, and the children's reactions to them, are qualitatively different than the showings involved in the handful of decisions (including by this court) that have found evidence sufficient for a remand in light of *Caden C.* (See authorities cited at footnote 4, *ante,* page 7.)

The social worker's testimony corroborated that mother was "appropriate" with the children during visits and they "seemed comfortable" with her, based upon the fact that they engaged in conversation with her.

Mother's testimony at the hearing about the boys' relationship to her was extremely brief. She testified J.R. would greet her at visits by saying "Mommy," would "sometimes" kick his feet in his car seat in excitement to see her and "sometimes" was "a little hesitant" to leave when visits ended. She also testified B.R. calls her "Mom" and does not put up any resistance when visits end.

11

The record of the section 366.26 hearing as a whole would not permit a finding in mother's favor. Three-year-old J.R. had been in foster care for nearly half of his life and two-year-old B.R. for most of his life. (Cf. *In re Eli B.* (2022) 73 Cal.App.5th 1061, 1074 [considering, inter alia, two-year-old child's age and portion of life spent in parental custody in holding second element not satisfied].) At most, all of the foregoing evidence shows that mother occupied the role of a " 'friendly visitor or friendly nonparent relative' " to these two very young children. (*In re Helen W.* (2007) 150 Cal.App.4th 71, 81.) Despite mother's evident love for her two boys, evidence that the toddlers enjoyed their visits with her is simply not enough for a parent to prove the kind of qualitative attachment that the parental benefit exception requires. (See, e.g., *In re Helen W.,* 150 Cal.App.4th at p. 81 [affirming order terminating parent rights despite evidence mother fed and changed children during visits, was called "Mom," where children were young and spent most of their lives out of mother's custody]; *In re Jason J.* (2009) 175 Cal.App.4th 922, 938 [affirming order terminating parental rights despite evidence that father was "affectionate and appropriate" with son, son was comfortable with father and called him "Daddy," because there was "no evidence" that boy "has the type of emotional attachment to [father] that would cause him to be greatly harmed if parental rights were terminated"]; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 571, 572-573, 575-576 [affirming order terminating parental rights concerning child detained at age one who spent three-quarters of her life in foster care, despite evidence of friendly visits between parent and child].)

Finally, mother raises a number of new issues in her reply brief. She argues: the juvenile court did not analyze the second element at all (contrary to her argument in the opening brief and page 14 of the reply brief itself that

the court did so but incorrectly), it relied on another improper consideration under *Caden C.* which was mother's lack of progress in resolving the issues that led to the dependency, and the agency's reports provided insufficient information about the children's relationship to her, which she says is not an "object[ion] to the sufficiency of those reports, but rather, [a] claim[] that those reports could not have provided the juvenile court with the necessary information for it to evaluate" the applicability of the second element. We decline to consider these arguments because they have been forfeited.[6] (See *Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 997 [improper to raise new argument in reply brief].) Further, even if we considered them on the merits they would fail for the same reason just discussed: on this record, any such errors were harmless.

## DISPOSITION

The judgments terminating parental rights are affirmed.

---

[6] With regard to the social worker's reports, we also note that mother asserted in passing in a single sentence of her opening brief, without any analysis or citation to the record, and not captioned under a required separate argument heading, that "the social worker's reports failed to evaluate" the second element of the beneficial relationship exception. That completely undeveloped point is not a proper appellate argument, and is properly disregarded too. (See *Shiheiber v. JPMorgan Chase Bank, N.A.* (July 26, 2022, No. A160188) 2022 WL 2951916, at pp. *4, *11.) Further, as noted, mother asserts in her reply brief that all she meant was not that the reports are deficient but that they could not have supplied an evidentiary basis for the court's ruling.

_____

STEWART, J.

We concur.

_____

RICHMAN, Acting P.J.

_____

MILLER, J.

*In re J.R.* (A164334)

Trial Court:  Humboldt County Superior Court

Trial Judge:  Hon. Doris L. Shockley

Counsel:

Erin W. Keefe, under appointment by the Court of Appeal, for Defendant and Appellant.

Scott A. Miles, Interim County Counsel, Anne H. Nguyen, Deputy County Counsel, for Plaintiff and Respondent.